**Mary F. TOLLEFSEN, Appellant,**

v.

**Gordon Eric TOLLEFSEN, Appellee.**

**Nos. S–8365.**

Supreme Court of Alaska.

June 11, 1999.

Rehearing Denied July 14, 1999.

---

**3.**  *See* Op. at 567.

Allison E. Mendel, Mendel & Associates, Anchorage, for Appellant.

Stacy K. Steinberg, Robertson, Monagle & Eastaugh, Anchorage, for Appellee.

Before MATTHEWS, Chief Justice, COMPTON, EASTAUGH, FABE, and BRYNER, Justices.

## OPINION

FABE, Justice.

## I. INTRODUCTION

In this appeal, we review the superior court's distribution of marital property and award of alimony in the divorce of Mary and Gordon Eric Tollefsen. Mary contends that the superior court's findings on the relevant statutory factors do not support its division of the marital estate. She also argues that the court awarded her inadequate alimony. While the superior court's findings are thorough and its division of property may be upheld as equitable, several aspects of the superior court's order do not appear to reflect the superior court's goals in dividing the property. We therefore affirm the superior court's findings of fact and award of alimony but remand to account for the costs of preparing and selling the real property awarded to Mary.

## II. FACTS AND PROCEEDINGS

Mary and Gordon Eric (Eric) Tollefsen married in 1969. They separated in May 1996, and Mary filed for divorce one month later. Of their five children, only their youngest child, Travis, remained a minor at the time of trial in July 1997.

Throughout the marriage, Eric was the primary wage earner. At the time of trial, he was the Director of Human Resources at Carr Gottstein Foods Co., earning approximately $78,000 annually, and had been employed there for about twenty-five years. Mary was primarily a homemaker until 1986. From 1986 to 1996, she worked for approximately eleven different employers. She has never maintained a job for a significant period of time, due to physical and mental health problems including depression, migraine headaches, and, according to the superior court, "a disease known as Ankylosing Sponylitis which apparently results in spinal stenosis and some spinal cord compression." Mary is a high school graduate and has had additional training through workshops.

Superior Court Judge Rene J. Gonzalez heard the case on July 7–9, 1997. In its findings, the superior court observed that approximately ninety percent of the marital estate was in real property and retirement funds. The parties' marital assets included the marital home (net equity $106,303), five rental properties and a cabin (net equity $408,078), investment accounts (net equity $46,728), and Eric's retirement accounts (net equity $381,754). According to Eric, the rental properties generate approximately $1,600 in monthly income.

The court awarded Mary assets with a net equity of $327,170 (52.6% of the marital estate) and awarded Eric assets with a net equity of $293,701 (47.4% of the marital estate). Mary received an investment account worth $29,626, three rental properties, and the marital home, which she had asked the court *not* to award to her due to its state of ill-repair and high maintenance costs. The court equally split Eric's retirement accounts between each party. Finally, the court allocated $12,483 of the marital debt to Mary and $13,669 of the marital debt to Eric. The court also awarded Mary reorientation alimony in the amount of $1,000 a month for twenty-four months.

Mary moved for reconsideration of the property division and the award of spousal support, arguing that "the Court has awarded her a collection of property and support which ensures that in the short run, she will be completely unable to support herself." The court denied the motion. Mary appeals.

## III. DISCUSSION

### A. Standard of Review

As the "superior court has broad latitude in making property divisions in di-

vorce proceedings," [1] we review the division of property for abuse of discretion.[2] We will find an abuse of discretion only when we are "left with a definite and firm conviction, after reviewing the whole record, that the superior court erred in its ruling." [3] The trial court's decision about the equitable allocation of property will only be set aside if it is clearly unjust.[4] Awards of alimony are also within the superior court's discretion and will be set aside only if "unjust or unnecessary." [5]

### B. The Superior Court's Property Distribution Does Not Accomplish the Goals Expressed in Its Findings.

■■■ Mary argues that the trial court's division of the marital estate should be reversed as clearly unjust because the court failed to consider how its findings related to her short-term needs and expenses. Alaska Statute 25.24.160(a)(4)(A)-(I) governs the division of marital property in a divorce proceeding and sets forth the factors the superior court must consider in allocating property. These factors include the length of the marriage, the earning capacity of the parties, and the circumstances and needs of each party.[6] Although an even division of marital property is presumed to be equitable,[7] "[w]hen a couple has sufficient assets, the spouse with the smaller earning capacity can and should receive a larger share in the property distribution to aid him or her in this transition." [8] Furthermore, in making an equitable division of the property, the superior court must state the facts forming the basis of the division and address the relevant statutory factors.[9]

In accordance with the controlling statute, the superior court stated with precision the findings on which it based its division of property. It found that Mary was "clearly the economically disadvantaged party" and that the "economic effects of the divorce have fallen much more heavily on Mary than on Eric." The court further noted that "[e]ven if Mary [were] able to work full time, which clearly she is not, her maximum earning potential would be far below Eric's." As a result, the court found that "an unequal divi-

1. *Lang v. Lang*, 741 P.2d 1193, 1195 n. 4 (Alaska 1987) (citation omitted).

2. *See Richmond v. Richmond*, 779 P.2d 1211, 1213 (Alaska 1989) (citation omitted).

3. *Lang*, 741 P.2d at 1195 n. 4 (citation omitted).

4. *See id.*

5. *Richmond*, 779 P.2d at 1215 (citation omitted).

6. AS 25.24.160(a) provides:

   (a) In a judgment in an action for divorce or action declaring a marriage void or at any time after judgment, the court may provide

   ....

   (4) for the division between the parties of their property, including retirement benefits, whether joint or separate, acquired only during the marriage, in a just manner and without regard to which of the parties is in fault; however, the court, in making the division, may invade the property, including retirement benefits, of either spouse acquired before marriage when the balancing of the equities between the parties requires it; and to accomplish this end the judgment may require that one or both of the parties assign, deliver, or convey any of their real or personal property, including retirement benefits, to the other party; the division of property must fairly allocate the economic effect of divorce by being based on consideration of the following factors:

   (A) the length of the marriage and station in life of the parties during the marriage;
   (B) the age and health of the parties;
   (C) the earning capacity of the parties, including their educational backgrounds, training, employment skills, work experiences, length of absence from the job market, and custodial responsibilities for children during the marriage;
   (D) the financial condition of the parties, including the availability and cost of health insurance;
   (E) the conduct of the parties, including whether there has been unreasonable depletion of marital assets;
   (F) the desirability of awarding the family home, or the right to live in it for a reasonable period of time, to the party who has primary physical custody of children;
   (G) the circumstances and necessities of each party;
   (H) the time and manner of acquisition of the property in question; and
   (I) the income-producing capacity of the property and the value of the property at the time of division.

7. *See Lundquist v. Lundquist*, 923 P.2d 42, 53 (Alaska 1996).

8. *Dixon v. Dixon*, 747 P.2d 1169, 1173 (Alaska 1987) (citations omitted).

9. *See Money v. Money*, 852 P.2d 1158, 1160 (Alaska 1993) (citations omitted).

sion of the marital estate in Mary's favor [was] warranted," and awarded Mary assets with total net equity of $327,170, representing 52.6% of the marital estate. Thus, as Mary concedes, the superior court made findings on all of the relevant statutory factors.

■ Still, Mary contends that the superior court did not address how she "could even exist on the properties awarded to her" and that the division "clearly could not meet [her] reasonable needs." She focuses principally on two alleged oversights by the superior court. First, in awarding Mary the family home, the court did not discuss how Mary was to make the monthly mortgage payment, which the court had previously recognized as approximately $1,800. Second, although the superior court acknowledged that "necessary repairs" were required to prepare each of the rental properties for sale and that "[t]he family residence is also in need of substantial repairs and completion of a remodeling project before it can be sold," the court did not make any provision for Mary to be able to prepare the house or other properties for sale. The estimated cost of repairing the marital home alone ranged from $12,000 to $20,000.

Both the mortgage and repair costs will burden Mary significantly in the short term given her limited access to cash. In particular, the investment accounts of approximately $29,700 [10] and the reorientation alimony of $1,000 a month do not cover the $12,000 to $20,000 in repair costs for the marital home, the $1,800 monthly mortgage payment, and the $12,000 of consumer debt allocated to her.[11] She alleges that her cash reserves will be exhausted within six months.

Eric counters that the court's award to Mary closely resembles the property division she sought at trial. Eric asserts that Mary sought 55.53% of the marital estate and $1,000 monthly alimony. Mary does not dispute this claim; rather, she merely states that "[t]his is only partially true" because she sought a greater share of the cash assets and

particularly requested that the marital home not be awarded to her.

In deciding to award over 50% of the marital property to Mary, the court sought to achieve an equitable distribution and to account for Mary's needs. The trial court did not overlook the $1,800 mortgage payment Mary contests because it premised its decision on the sale of the marital home and other real estate. Thus, although the court did not create a budget for Mary, its findings contemplated that proceeds from the sale of real property would meet Mary's needs and that the $1,000 alimony award would provide assistance during this transitional period.

But the superior court also expressly recognized the need for "substantial repairs" to the marital home and other real property before Mary could sell them. Moreover, the court understood that the readily accessible liquid assets were very limited and that 90% of the estate consisted of real property and retirement funds. Finally, the court noted that "Mary is going to need a transitional period to sell property which will be awarded to her which may not be appropriate to her current needs or financial status." Despite these findings, the superior court failed to take into account the costs of necessary repairs for the marital home or other properties awarded to Mary or the commissions and closing costs that she will incur in completing the sales.

While the trial court had considerable discretion over how to carry out its findings in the property distribution, its failure to make any provision for the costs of repair and sale prevented the property division from meeting the court's stated goal of an unequal property split in Mary's favor. The trial court specifically found that the marital home required "substantial repairs and completion of a remodeling project *before it can be sold.*" (Emphasis added.) The parties agreed that *after repair and sale,* the house would have a net equity of $106,303. There is nothing in the record to support the conclusion that Mary would be able to recoup, through in-

---

**10.** Given that almost $2,000 of the investment account funds are in an IRA, the amount available to Mary is actually closer to $27,700.

**11.** Mary further contends that the taxes and insurance on the marital home "could reasonably be expected to exceed $8,000."

creased market value, any part of the money she invests in preparing the house for sale. If the repairs cost the estimated $20,000, and Mary were able to make them, her recovery from the house sale would be only $86,303, less commissions, rather than the $106,303 intended by the court. Thus, the superior court's property distribution would actually leave Mary with less than half of the marital estate, despite the trial court's stated intent that she receive a larger share of marital property than Eric.[12]

Ordinarily, the trial court need not consider the factors of sale costs and commissions for real property awarded to one party because both parties will encounter such expenses in any sales of real property awarded to them, thus balancing out their net awards. Here, however, the trial court premised its division of marital property on Mary's sale of the real property awarded to her, while no finding contemplated that Eric would have to sell the real property awarded him. And the alimony award does not provide Mary with the present means to prepare the property for sale or to make the ongoing house payment of $1,800, which the court recognized she could not afford.

In summary, although the superior court expressly found that Mary was the economically disadvantaged party, the court's failure to make provision for the costs of repairs and sale of the real property awarded to Mary defeated its stated goal of awarding her the greater share of the marital estate.

C. *The Superior Court Awarded Adequate Alimony.*

▮▮▮ Mary also argues that the trial court's award of $1,000 monthly reorientation alimony for twenty-four months is inadequate. Under AS 25.24.160(a)(2), a trial court may award alimony "as may be just and necessary ... [to] fairly allocate the economic effect of divorce." The trial court's award of alimony must "be accompanied by

adequate findings, particularly with respect to the financial needs and abilities of both parties."[13] "The purpose of reorientation alimony is to allow the requesting spouse an opportunity to adjust to the changed financial circumstances accompanying a divorce."[14]

In this case, the trial court made findings about the necessity of reorientation alimony. The court intended the award to aid Mary "so that she may organize the considerable non-liquid and other property being distributed to her from the marital estate." The court further noted her poor health, her lack of earned income, and her questionable employability. Moreover, the court appears to have based the period of reorientation alimony—twenty-four months—on Mary's request. Indeed, Mary concedes that she sought $1,000 a month of reorientation alimony for two years.

▮▮▮ Nevertheless, Mary maintains that the amount of her request for alimony can only be understood in the context of her proposed property division and that because the court awarded her less property than she sought, she needs a larger award of alimony. Perhaps a larger monthly alimony payment over a shorter period would have better suited Mary's short-term needs. But the court's award of reorientation alimony mirrored Mary's request. Moreover, we have directed the trial court to adjust its property distribution to further the goals articulated in its findings. In light of these circumstances, the trial court did not abuse its discretion in setting the alimony award.

IV. *CONCLUSION*

We AFFIRM the superior court's findings of fact and its award of alimony. But we VACATE the court's property division and REMAND for adjustment to account for the costs and commissions Mary will incur for the sales of the real property awarded to her.

---

12. Neither party discussed estimates of the necessary repairs for the other properties, but the problem would be similar. The trial court also did not factor closing costs or sales commissions, all of which will significantly reduce Mary's net recovery from all the properties.

13. *Davila v. Davila*, 876 P.2d 1089, 1094 (Alaska 1994).

14. *Richmond v. Richmond*, 779 P.2d 1211, 1215 n. 6 (Alaska 1989) (citation omitted); *see also Money v. Money*, 852 P.2d 1158, 1164 (Alaska 1993).

MATTHEWS, Chief Justice, dissenting.

In my view the property division ordered by the trial court is not an abuse of discretion or clearly unjust. Further, I see no reason to conclude that the property division contradicts the court's objective of awarding a property division in Mary's favor. I would therefore affirm the judgment in its entirety.

Mary received assets with a net equity of $327,170, plus one half of the marital property in retirement plans, another $174,742 according to her brief. Eric received net assets of $293,701, plus the other half of the marital property in retirement plans. The trial court stated that Mary was relatively economically disadvantaged when compared to Eric and "that an unequal division of the marital estate is warranted in this case as follows: [the court then listed the assets awarded Mary including their fair market value and net equity]." The court did not state that any specific division in terms of percentages was intended.

The majority opinion concludes that the trial judge mis-valued the real estate awarded Mary because it did not account for the cost of necessary repairs.[1] The majority further concludes that the court should also have deducted closing costs and sales commissions from these properties.[2]

In my view the trial judge cannot fairly be faulted for determining net equity as he did. Several reasons support this conclusion.

First, the net values found by the trial court were exactly those listed in a document Mary submitted during the trial. If deductions were necessary for repairs and sales costs she should have so indicated. Her failure to assert the alleged inaccuracy of these values or their need of further adjustment until after the trial (when the properties were awarded to her) should preclude her from making this claim on appeal.

Second, fair market value represents an "as is, where is" concept. The fair market value of a house in need of repair will be lower than that of an otherwise identical house needing no repairs. Because fair market value is the value of property in its present condition, I see no reason to assume that the values submitted by Mary and determined by the trial court were not already discounted because the properties needed repairing. Indeed, Eric stated in the trial court, "the house was appraised 'as is' and the 'as is' value was used at trial." I do not read his brief on appeal as contradicting this position and I am unaware of any agreement that does so.

Third, Eric also received substantial real estate under the property division. He received three properties with a net value of $243,756, whereas Mary received four properties having a net value of $270,627. All the properties were valued in accordance with Mary's in-trial submission. The trial court found that two of the properties awarded Eric (valued together at $166,256) required repairs before they could be sold. If the majority's assumption that the fair market value of the properties did not reflect their repair needs is correct, repair costs would also have to be deducted from the values assigned to the properties awarded Eric. Likewise, if values for Mary's properties are to be net of sales costs, Eric's properties should be valued on the same basis. Would deducting costs of needed repairs and costs of sale from Eric's properties as well as Mary's achieve the trial court's objective of a property division favoring Mary? That depends on the costs of repair and sale for each property. We lack this information and it apparently was not presented at trial. Thus we cannot conclude that the distribution failed to achieve the trial court's objective of awarding property to Mary having a greater value than that awarded to Eric.

Any quest for exactitude in valuing real estate will necessarily fail. Value is at best a matter of informed opinion, and informed opinions differ, sometimes substantially. About all one can expect is that values will fall within a reasonable range and, when

---

**1.** Op. at 571.

**2.** Op. at 572.

numerous properties are being valued for comparative purposes, that the same criteria for value are used for each property. The trial court's decision meets these expectations. I would not disturb it.