Carolyn Vieve DAY, Appellant
and Cross–Appellee,

v.

Charlie T. WILLIAMS, Appellee
and Cross–Appellant.

Nos. S–13423, S–13433.

Supreme Court of Alaska.

Sept. 7, 2012.

Michael Gershel, Anchorage, for Appellant.

James W. McGowan, Sitka, for Appellee.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and STOWERS, Justices.

*OPINION*

STOWERS, Justice.

## I. INTRODUCTION

In this appeal we review the superior court's valuation and distribution of marital property in the divorce of Carolyn Vieve Day and Charlie T. Williams. Day appeals on three grounds: first, she contends that the superior court erred when it found her to be employable; second, she argues that the facts and equities of this case do not support a 50–50 property division; and third, she argues that the superior court should not have included in the marital estate funds that had already been spent by the date of trial. We remand for additional findings on the superior court's 50–50 property division because the court did not make sufficient findings to explain why an equal distribution was justified in the presence of facts that appear to favor a greater distribution to Day. Because we are remanding for further findings as discussed below, the court will have the opportunity to reexamine its findings on Day's employability. Finally, we conclude that it was error for the superior court to include in the marital estate funds that had already been spent by the time of trial.

Williams cross-appeals on three grounds: first, that the superior court erred when it revalued the parties' duplex after divorce; second, that the court should not have applied the active appreciation theory when valuing the land on which the parties' paint business was situated; and third, that the court should not have awarded attorney's fees to Day. We agree with Williams that revaluing the duplex would have been improper, but because it is not clear whether the superior court actually revalued the duplex, we vacate the order to sell the duplex and remand for reconsideration and clarification. We also hold that it was error for the superior court to award Day the duplex without considering whether she would be able to afford to keep or sell the property. As to Williams's remaining two claims, we affirm the superior court's decisions.

## II. FACTS AND PROCEEDINGS

### A. Facts

Day and Williams were married in May 1993 and permanently separated in April 2007. They have no children.

Prior to marriage the couple signed a prenuptial agreement. The prenuptial agreement stated that in the event of divorce,

Williams would receive $250,000, Day would receive $15,000, and all other property would be divided equally. The agreement also provided that it would last for only ten years, but if "either party has filed for divorce or dissolution on or before ten years from the date of the execution of this agreement, it shall continue in effect." Day filed for divorce in 2002, less than ten years after the agreement was made, but quickly dismissed the action.

During the marriage, Williams's primary source of income was Valley Paint Center, a business in which he was a majority partner at the time of the marriage and of which he became the sole owner during the marriage. In the years immediately prior to the couple's separation, the business consistently had annual sales receipts between $1.6 and $1.7 million, and was largely responsible for the couple having adjusted gross incomes ranging between $183,520 and $287,963 from 2004–2006.

Although she has an associate's degree in health information management, Day's primary source of income during the marriage was from working in retail: she worked at General Nutrition Center (GNC) for five years and worked for short periods of time at other retail establishments. In 2007, the year the couple separated, Day's adjusted gross income was $22,929 and Williams's was $203,802.

Day began to suffer from medical problems towards the end of the marriage. In 2007 she underwent successful back surgery to correct herniated discs and osteophytes (bone spurs). She also suffered from serious eye problems and underwent a corneal transplant in her right eye prior to trial in 2008. Dr. Harry Geggel, who performed the transplant, testified at trial that "normally it takes up to a year and a half after [a corneal transplant] ... for patients to get some visual usefulness out of the eye." He testified that Day will likely need a corneal transplant in her left eye once the right fully heals.

After the parties separated in 2007, Day remained in the couple's duplex for several months, moving out in September 2007. She

then lived with her mother before moving into her own apartment, from which public transportation was not accessible. Day withdrew over $30,000 from a joint account after separation to pay for living expenses, and also withdrew money from the couple's health savings account to pay for medical expenses.

### B. Proceedings

In October 2007 Day filed for divorce, asking the superior court to divide the parties' property "in a just and equitable manner." The superior court conducted a bench trial in September 2008, and issued its findings and conclusions and a divorce decree in October 2008.

The court found that because Day initially "filed for divorce prior to the 10–year marriage mark, the prenuptial agreement continued according to [its] terms...." But the court concluded:

> [T]he equities of this case do not warrant strict application of the prenuptial agreement.... The agreement was ... made at a time when both parties agreed that they were each of sound health, approximately the same age and had sufficient job skills to support themselves. While [this was] likely true at the time of marriage, [Day's] current vision issues, which will continue for approximately 18 months to two years, were not foreseen when the agreement was made. Under these circumstances, the agreement is accorded some probative value as to intent but will not be strictly enforced in this case.[1]

The superior court found that when the couple first married, the Valley Paint Center business was worth $32,400, the real property on which the business was located was worth $118,000, and the total value of the asset was $151,000. The court found that at the time of trial the business was worth $170,087, the real property was worth $180,245, and the total value of the asset was $350,332. Applying "active appreciation" analysis, the superior court concluded that $151,000 of the total value of the asset was Williams's separate property and that

---

1. Neither party appeals this ruling.

$199,332, the amount by which the value of the asset increased during the marriage, was marital property.

The court found that most of the parties' other assets were marital property and it divided them equally between Day and Williams. Among the assets Day received were the parties' duplex and the money she withdrew from the joint account after separation. The court stated "that a 50–50 distribution of the marital estate . . . [was] fair given all of the circumstances of this case."

The court also determined that Day was not entitled to spousal support, noting that Day had "been living well beyond her reasonable financial needs and resources" and had "not meaningfully pursue[d] reasonable employment." The court found that "[w]hile [Day's] eye condition will limit her job opportunities, this court is not satisfied that she is unemployable," citing the fact that "she is well-educated and articulate." The court found that Day suffered from medical problems, but noted that she was able to go on a recent scuba diving trip and stated that it was "likely that the stress of the divorce [had] exacerbated [her] health problems."

Day filed a motion for reconsideration alleging several errors in the superior court's findings and conclusions. Williams then filed his own motion for reconsideration. On November 24 the superior court granted both motions in part. It also awarded Day one-half of her attorney's fees, which amounted to $10,406, noting that "Day's current income-producing capabilities are significantly less than [those] of . . . Williams." In January 2009, the superior court issued its order upon reconsideration of the case. In it the court ordered, among other things, that Day attempt to refinance the duplex so that she was the sole owner, but noted that "the realities of current economic conditions suggest that refinancing of the home into . . . Day's sole ownership may be problematic."

The court ordered Day to sell the duplex if refinancing was not possible.

Day appeals the finding that she was employable, the equal division of the marital estate, and the inclusion of the funds she spent after separation in her share of the marital estate. Williams cross-appeals, challenging the terms of the order of the conditional sale of the duplex, the use of active appreciation analysis on the real estate portion of the Valley Paint Center asset, and the award of attorney's fees.

### III. STANDARD OF REVIEW

We review the superior court's finding that Day was employable for clear error. Factual findings are upheld unless they are clearly erroneous,[2] and we grant "particular deference to the trial court's factual findings when they are based primarily on oral testimony, because the trial court, not this court, performs the function of judging the credibility of witnesses and weighing conflicting evidence."[3]

We review the superior court's property division for abuse of discretion because "[t]rial courts have broad discretion in fashioning property divisions . . . . [and] we reverse such awards only if they are clearly unjust."[4] While trial courts have broad discretion in matters of property division, "[a]n order of recapture is . . . not justified without findings of fact that the assets in question were actually wasted, dissipated, or converted to non-marital form. These findings cannot be merely conclusory, but must be based on evidence."[5] A superior court errs when it recaptures property without making specific findings of fact as to waste or dissipation.[6]

We review the superior court's decision to reconsider and revalue the duplex

2. *In re Protective Proceedings of W.A.*, 193 P.3d 743, 748 (Alaska 2008).

3. *Millette v. Millette*, 177 P.3d 258, 261 (Alaska 2008) (quoting *Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005)) (internal quotation marks omitted).

4. *Barnett v. Barnett*, 238 P.3d 594, 597 (Alaska 2010) (internal citations and quotation marks omitted).

5. *Ethelbah v. Walker*, 225 P.3d 1082, 1090–91 (Alaska 2009) (internal citations omitted).

6. *Id.*

for abuse of discretion.[7] Whether active appreciation is the appropriate legal theory to use is reviewed de novo.[8] The valuation of the property itself is a factual determination and is reviewed for clear error.[9] A finding is clearly erroneous if we are "left with a definite and firm conviction based on the entire record that a mistake has been made."[10]

■ Finally, we review the superior court's award of attorney's fees for abuse of discretion.[11]

## IV. DISCUSSION

### A. We Vacate And Remand The Property Division Because We Cannot Determine The Basis For The Superior Court's Decision.

■ Alaska Statute 25.24.160(a)(4) provides that "division of property must fairly allocate the economic effect of divorce ... based on consideration of the following factors":

(A) the length of the marriage and station in life of the parties during the marriage;

(B) the age and health of the parties;

(C) the earning capacity of the parties, including their educational backgrounds, training, employment skills, work experiences, length of absence from the job market, and custodial responsibilities for children during the marriage;

(D) the financial condition of the parties, including the availability and cost of health insurance;

(E) the conduct of the parties, including whether there has been unreasonable depletion of marital assets;

(F) the desirability of awarding the family home, or the right to live in it for a reasonable period of time, to the party who has primary physical custody of children;

(G) the circumstances and necessities of each party;

(H) the time and manner of acquisition of the property in question; and

(I) the income-producing capacity of the property and the value of the property at the time of division.[12]

We have explained that, in general, "[t]he law presumes that an equal division of property is equitable"[13] and "the party seeking deviation from the norm[] bears the burden of showing that the property division is clearly unjust."[14] But we have also stated that "[w]hen a couple has sufficient assets, the spouse with the smaller earning capacity can and should receive a larger share in the property distribution to aid him or her in this transition."[15] We have explained that one consideration in reviewing marital property divisions is "whether the property division was adequate to meet the parties' needs while they made the transition into post-marital life."[16]

The superior court determined "that a 50–50 distribution of the marital estate ... is fair given all of the circumstances of this case." The court explained that the equal

7. See Barnett, 238 P.3d at 597 (internal citations omitted).

8. See Schmitz v. Schmitz, 88 P.3d 1116, 1122 (Alaska 2004).

9. Id.

10. Farmer v. Farmer, 230 P.3d 689, 693 (Alaska 2010) (quoting Casey v. Semco Energy, Inc., 92 P.3d 379, 382 (Alaska 2004)).

11. Wagner v. Wagner, 183 P.3d 1265, 1266 (Alaska 2008).

12. See also Merrill v. Merrill, 368 P.2d 546, 547–48 n. 4 (Alaska 1962) (listing similar factors the court must consider in dividing marital property).

13. Miller v. Miller, 105 P.3d 1136, 1140 (Alaska 2005) (citing Lundquist v. Lundquist, 923 P.2d 42, 53 (Alaska 1996)); see also Heustess v. Kelley–Heustess, 158 P.3d 827, 833 (Alaska 2007) ("When dividing a marital estate, 'the trial court generally should begin with the presumption that an equal division of marital property is most equitable.'" (quoting Fortson v. Fortson, 131 P.3d 451, 456 (Alaska 2006))).

14. Brandal v. Shangin, 36 P.3d 1188, 1194 (Alaska 2001) (citing Julsen v. Julsen, 741 P.2d 642, 645 (Alaska 1987)).

15. Tollefsen v. Tollefsen, 981 P.2d 568, 570 (Alaska 1999) (alteration in original) (quoting Dixon v. Dixon, 747 P.2d 1169, 1173 (Alaska 1987)).

16. Fortson, 131 P.3d at 457 (citing Dixon, 747 P.2d at 1173).

division would meet Day's needs in her transition into post-marital life, noting that she "will receive a net estate value of over $400,000." But the court made no findings under AS 25.24.160(a)(4) or *Merrill*, nor did it otherwise explain its reasoning in dividing the marital estate equally.

Day argues that the superior court's decision to divide the marital estate equally was an abuse of discretion, contending that "[e]ach of the factors applicable to this case supports an unequal division of the marital estate." Day's arguments are largely based on her health problems and lesser earning capacity: she argues that (1) the age and health of the parties [17] supports an unequal division, citing her eye and back problems; (2) the relative earning capacities and financial conditions of the parties,[18] including the availability of health care, supports an unequal division, citing Williams's superior earning capacity; (3) the time and manner of acquisition of the property [19] supports an unequal division, citing Williams's greater premarital assets; (4) the income-producing capacity of the property and the value of the property at the time of division [20] supports an unequal division, because "Williams received all of the income producing property"; and (5) the need for spousal support supports an unequal division, again citing her health problems and inferior earning capacity. Williams counters that the superior court's equal division of the marital estate should be affirmed because it was a decision within the court's broad discretion.

We are unable to determine how the superior court reached its conclusion that an equal division was just and equitable given the facts and circumstances of the case and the court's rather cursory explanation. Looking at the statutory factors listed above, we observe that the duration of the marriage was approximately 14 years, a substantial length of time. Williams, who was 48 years of age at the time of separation, had no evident health issues while Day, who was 44 at separation, had comparatively worse health due especially to her recent and continuing eye problems. Williams had a much higher earning capacity than Day, even when Day was employed in retail and before she experienced her eye problems. In finding that spousal support was not warranted, the superior court acknowledged that Day's "income has been and will be dramatically reduced from that enjoyed during marriage," demonstrating that it understood that Day's income would be less than Williams's going forward.[21]

The superior court did not make a specific finding regarding the parties' health insurance, although the issue was addressed at trial. The presence or absence of health insurance is particularly relevant here, given Day's substantial health care concerns and the superior court's acknowledgment that it was concerned Day may not be able to afford to keep the duplex. Day testified that she pays nearly $500 a month for private health insurance. At trial, Day was recovering from corneal surgery on one eye and she expected to have a similar surgery on the other. Thus, it was apparent that she had incurred and would likely continue to incur significant health care expenses. The superi-

17. AS 25.24.160(a)(4)(B).

18. AS 25.24.160(a)(4)(C).

19. AS 25.24.160(a)(4)(H).

20. AS 25.24.160(a)(4)(I).

21. We note that we are troubled by the superior court's findings with respect to Day's employability. In addition to the court's observation that Day's income had been and will be dramatically reduced, when considering Day's employability, the court found that Day's corneal transplant "has limited and will limit [Day's] vision for approximately one year [to] 18 months, after which a second corneal transplant on her other eye will occur, with another year [to] 18 months with limited vision." The court also acknowledged that Day "does not currently drive due to her eye condition." The court nevertheless determined that Day was not "making meaningful efforts to secure employment." Because the superior court did not explore the degree to which Day's employment opportunities would be affected by her serious vision impairment after corneal surgery, we invite the court to reevaluate this issue on remand. Because we are remanding this case on other issues and because facts may have changed since the superior court last considered this case, the superior court in its discretion may wish to take additional evidence as it reexamines Day's employability and other factors on remand.

or court did not make any specific findings as to either party's health care expenses and health insurance costs, or the impact of their health care costs on their financial conditions. Alaska Statute 25.24.160(a)(4)(D) specifies that cost of health insurance is an element of the parties' financial condition, and the superior court therefore should have made such findings under the circumstances of this case.

As noted, the superior court acknowledged that Day's "income has been and will be dramatically reduced from that enjoyed during marriage," but this comment was made in the context of determining spousal support, which the court declined to award, and not in the context of property division. With respect to the income-producing capacity of the properties and their values at the time of division, it was clear that Williams's paint shop business had a history of substantial income production. The court observed in its order on the motions for reconsideration that Day's duplex was not then making money, "and that 'the unprecedented economic downturn that has occurred since trial ... has likely impacted the value of virtually all of the parties' assets.'" But the court did not make any finding regarding how these and other factors affected the equitable distribution of the marital property.

 It may be that the court simply relied on that general presumption that an equal distribution of property is fair and equitable; but the presumption must be balanced against countervailing considerations, such as fairly allocating the economic effect of divorce and ensuring the property division is adequate to meet both parties' needs while transitioning into post-marital life.[22] Unfortunately, we cannot determine how the court reached its decision. When even a superficial examination and balancing of the statutory factors appear to weigh in favor of the spouse who earns substantially less than the other spouse, a conclusory statement that "a 50–50 distribution of the marital estate is fair

given all of the circumstances" does not provide sufficient information to permit meaningful review.[23]

We therefore vacate the superior court's property distribution and remand for additional findings. If the court in its discretion determines that it is necessary, additional evidence may be taken.

### B. It Was Error To Distribute Money That Had Been Spent Before Trial.

Between the date of separation and the date of trial, Day withdrew $33,548 from a joint checking account and used the money for her living expenses. Also in this time period, Williams paid $7,893 for some of Day's expenses. In its property distribution, the superior court distributed $33,548 to Day as part of her share of the marital estate and credited Williams with $7,893.

Day argues that the superior court erred by including money spent before trial in the final property division. She argues the money "should have been treated ... as interim spousal support" and not offset against the final property division. She also argues that even if the superior court was permitted to offset the money against the final division, it was required to value the funds "as close as possible to the time of trial." In other words, Day argues that the "value" of those funds at the time of the trial, and consequently the amount that should have been offset against the final division, if anything, was zero, because the funds had already been spent.

Williams argues that it was appropriate for the superior court to offset the money against the final property division because it was not court-ordered interim support, noting that Day never requested an interim support order. He also argues that "a rule that interim expenditures ... should not count against the ultimate distribution of the marital estate" would encourage parties to

---

**22.** *See Fortson v. Fortson,* 131 P.3d 451, 457 (Alaska 2006).

**23.** *Cf. Dragseth v. Dragseth,* 210 P.3d 1206, 1208, 1210 (Alaska 2009) (noting, with respect to child custody determinations, that "[t]he court's findings should give us a clear indication of the factors which the superior court considered important in exercising its discretion or allow us to glean from the record what considerations were involved") (internal quotation marks and citations omitted).

"go[ ] on spending sprees" and "engage in irresponsible interim spending."

Day cites cases that support the proposition that interim support should not be offset against a final property division.[24] But she cites no authority for the notion that unilateral expenditures of marital funds, where the party does not request an interim support order, should be treated as interim support. The superior court did not abuse its discretion by not treating the funds as interim support.

It was error, however, for the superior court to value the funds as of the date of separation and recapture them for purposes of including them in its final property distribution absent specific findings that Day wasted or otherwise improperly used the funds. We have "consistently held ... that property should be valued as close as possible to the date of trial."[25] We have noted that "[a] valuation date should be chosen which will provide the most current and accurate information possible and which avoids inequitable results,"[26] but "[d]issipation of marital assets justifies a valuation at the time of separation."[27] We have also held, however, that the "recapture" of an asset, by valuing it at the time of separation rather than trial, is "not justified without findings of fact that the asset[ ] in question [was] actually wasted, dissipated, or converted to non-marital form."[28] "Marital assets that are spent after separation for marital purposes or normal living expenses are not typically taken into account in the final property division."[29]

Here the superior court made no finding that Day wasted or dissipated the funds and did not use them for normal living expenses. It did find that Day had "been living well beyond her reasonable financial needs and resources," and it remarked that it was "not reasonable [for Day] to assume that without working [she would] continue to have an income of $5,370.00 a month, which is the average that's been going on for this last 18 months." While these findings may justify not awarding spousal support, they are insufficient to justify recapture of the money that was expended by or on behalf of Day to meet her post-separation living expenses. The distribution of $33,548 to Day and the credit of $7,893 to Williams are reversed. On remand, the court shall make these adjustments, which will also affect its equitable distribution of the marital estate.

## C. We Remand The Court's Order On Reconsideration To Clarify Whether It Revalued The Duplex And To Consider Whether Day Can Afford To Maintain That Property.

In its initial property division, the superior court awarded the parties' duplex and the attendant mortgage to Day.[30] Day filed a motion for reconsideration, arguing that she did not receive sufficient liquid assets to keep the duplex. The superior court initially granted her motion to reconsider, stating that it would "reconsider whether to award the marital home to ... Williams

---

24. See Korn v. Korn, 46 P.3d 1021, 1022–23 (Alaska 2002); Jones v. Jones, 835 P.2d 1173, 1177 (Alaska 1992).

25. Miller v. Miller, 105 P.3d 1136, 1143 (Alaska 2005) (citing Leis v. Hustad, 22 P.3d 885, 888 (Alaska 2001)); see also Ogard v. Ogard, 808 P.2d 815, 819 (Alaska 1991) (establishing that the date of trial is a proper time for valuation of marital property).

26. Ogard, 808 P.2d at 819 (quoting L. GOLDEN, EQUITABLE DISTRIBUTION OF PROPERTY § 7.01, at 207 (1983)).

27. Miller, 105 P.3d at 1144; see also Cox v. Cox, 882 P.2d 909, 918 n. 5 (Alaska 1994) ("If assets no longer exist or are not owned by the parties, they are not available for distribution. However, where there is evidence that a marital asset was dissipated, wasted, or converted to a non-marital form, the court can 'recapture' the asset by giving it an earlier valuation date and crediting all or part of it to the account of the party who controlled the asset.") (citing Gallant v. Gallant, 882 P.2d 1252, 1255 n. 5 (Alaska 1994)).

28. Ethelbah v. Walker, 225 P.3d 1082, 1090 (Alaska 2009) (citing Korn, 46 P.3d at 1023).

29. Partridge v. Partridge, 239 P.3d 680, 692 (Alaska 2010) (citing Jones v. Jones, 942 P.2d 1133, 1139 (Alaska 1997)).

30. The court valued the home at $565,000, and the debt on the home at $247,092, producing a net value of the asset of $317,908.

and/or to direct that the home be sold, with half the net proceeds going to each party." But in its order on reconsideration, the court declined to amend its award of the duplex to Day.

Instead, the court ordered Day to "make her best efforts to refinance the home such that she is the sole owner," but noted "the realities of [the] current economic conditions" suggested that refinancing of the home into Day's sole ownership might be problematic. Therefore, the court ordered a contingent sale of the home: if Day was unable to refinance the home, the home was to be sold "at a mutually agreeable sum." [31] In the case of a sale, the court ordered the net value of the home to be adjusted to account for realtor and closing costs and any payments by Williams towards the maintenance of the home to be credited to him. Finally, the court stated that "[s]ale proceeds shall be allocated by the parties in such a way as to achieve the 50–50 distribution initially ordered by this court."

Williams argues the court's order on reconsideration was an abuse of discretion because it improperly revalued the duplex after the court's valuation of property at the end of trial. Day argues that the superior court "did *not* revalue the duplex on reconsideration," contending instead that the superior court "reapportioned the risk of loss related to the duplex" and "contingently directed that the market value of the duplex [for the purposes of the division] would be determined by the market itself [at the time of a sale]."

On the record before us, it is unclear whether the superior court revalued the duplex on reconsideration. The order that "[s]ale proceeds ... be allocated by the parties in such a way as to achieve the 50–50 distribution initially ordered by the court" is ambiguous. It could mean that proceeds from a sale would go entirely to Day, because she received the duplex in the "distribution initially ordered by the court." But it may also mean that sale proceeds were to be split

and the estate reallocated (or Williams's equalization payment adjusted) to achieve *the equal nature* of the "distribution initially ordered by the court."

Additionally, there is a more fundamental problem with the superior court's award of the duplex to Day—the court initially awarded her the home without considering whether she would have sufficient funds to maintain the property and, on reconsideration, ordered a contingent sale of the property without explaining how the parties should divide the costs and proceeds from the sale to maintain the court's initial goal of a 50–50 property division.

Day moved for reconsideration arguing that the net result of the court's division was that she had "no funds to protect the assets awarded to her from foreclosure or repossession." She argued the order guaranteed that she would have to sell the duplex, and that she would incur approximately $35,000 to $40,000 in realtor fees and closing costs. She asserted that the court's award made it financially impossible for her to keep the house because the record showed that the mortgage exceeded the rental income, and she had no additional funds or source of income to pay for the excess mortgage. She concluded that if she were forced to sell the duplex, it would be sold at below market value, and she would bear the costs of the sale, thus ensuring she would end up with less than 50% of the value of the marital estate. Day requested that the court restructure its property division, relying on *Tollefsen v. Tollefsen*.[32]

In *Tollefsen*, the superior court awarded the former wife assets with a net equity of 52.6 percent of the marital estate.[33] The former wife moved for reconsideration arguing that the court had awarded a collection of property and support which ensured that she would be completely unable to support herself.[34] She argued that such an award was clearly unjust because the court failed to consider how its findings related to her

---

31. Day claims in her appeal brief that she was unable to refinance the duplex.

32. 981 P.2d 568 (Alaska 1999).

33. *Id.* at 569.

34. *Id.*

short-term needs and expenses.[35] The trial court had found that she was clearly the economically disadvantaged party and that the economic effects of the divorce had fallen more heavily on her than the former husband.[36] The former wife argued that the court did not account for how she was to make the monthly mortgage payments or prepare the house for sale.[37] On appeal we concluded that the trial court, in deciding to award over 50 percent of the marital property to the former wife, sought to achieve an equitable distribution and account for her needs. But we held that:

> While the trial court had considerable discretion over how to carry out its findings in the property distribution, its failure to make any provision for the costs of repair and sale prevented the property division from meeting the court's stated goal of an unequal property split in [the former wife's] favor.[38]

We explained that the court's property distribution actually left the former wife with less than half of the marital estate, despite the fact that its stated intent was that she should receive a larger share of the estate.[39] We concluded:

> Ordinarily, the trial court need not consider the factors of sale costs and commissions for real property awarded to one party because both parties will encounter such expenses in any sales of real property awarded to them, thus balancing out their net awards. Here, however, the trial court premised its division of marital property on [the former wife's] sale of the real property awarded to her, while no finding contemplated that [the former husband] would have to sell the real property awarded [to] him. . . .
> In summary, although the superior court expressly found that [the former wife] was the economically disadvantaged party, the court's failure to make provision for the

costs of repairs and sale of the real property awarded to [her] defeated its stated goal of awarding her the greater share of the marital estate.[40]

Our holding in *Tollefsen* is applicable to the superior court's property division in this case, and to the court's order on reconsideration. Although the superior court made no findings on the statutory equitable division factors, we infer that the court concluded a 50–50 division would be sufficient to meet Day's needs, including her need to pay the mortgage and expenses to keep the duplex.[41] On reconsideration, the court declined to restructure the property division, but was troubled by Day's uncertain financial means, stating that "the realities of the current economic conditions suggest that refinancing of the home into [Day's] sole ownership may be problematic, thus effectively forcing a sale and related realtor/closing costs." So the court put in place a contingent order: if Day could not refinance the mortgage within 60 days, she was to sell the duplex. But the court's order is unclear as to how Day and Williams were to divide the costs and proceeds of the sale, or to actually achieve the 50–50 division of assets originally contemplated by the court.

It is possible to read the court's order as requiring the parties to share the realtor's fees and closing costs, but it is unclear if that adjustment alone would effectuate a 50–50 division of the property. Given the possibility that the duplex will sell (if at all) for less than its value at the time of trial, did the court intend that Williams's equalizing payment be increased to effectuate an equal division of the marital estate? This, too, is unclear. And under a *Tollefsen* analysis, it is questionable whether the proceeds Day will receive—whether the duplex is sold or not—and the other property awarded to her will accomplish the court's goal of arriving at a

---

35. *Id.* at 570.

36. *Id.*

37. *Id.* at 571.

38. *Id.*

39. *Id.* at 571–72.

40. *Id.* at 572.

41. In its order on reconsideration, the court stated that "[w]hile the duplex is not currently making money for [Day], it could be the best long-term investment she could make with her share of the marital estate."

fair and just distribution sufficient to meet Day's needs.

Because the court is required on remand to make additional findings and to correct its award as described above in this opinion, the court will necessarily have to reconsider its reconsideration order and specifically explain its intentions and the procedure the parties must follow in selling the duplex if a sale is to be ordered. We thus vacate the order on reconsideration and remand for further proceedings.

### D. The Superior Court Did Not Err In Valuing The Business.

■ Applying "active appreciation" analysis, the superior court concluded that $151,000 of the total value of the Value Paint Center asset was Williams's separate property and that $199,332, the amount by which the value of the asset increased during the marriage, was marital property. Williams argues that applying active appreciation analysis to the portion of the asset attributable to the real estate component of the business was erroneous, asserting that the superior court did not make the requisite findings.[42]

■ "Active appreciation occurs when marital funds or marital efforts cause a spouse's separate property to increase in value during the marriage."[43] In order to apply active appreciation analysis to an asset, a court must make three findings:

First, it must find that the separate property in question appreciated during the marriage. Second, it must find that the parties made marital contributions to the property. Finally, the court must find a causal connection between the marital contributions and at least part of the appreciation.[44]

The superior court found that the Valley Paint Center asset, including the real estate, appreciated during the marriage. The superior court also found that "[t]he increased value of the business [was] almost certainly due to marital efforts...." Specifically, Day allowed Williams to "work[ ] at the business all the time and the business prospered because of his commitment to it and his customers." Williams argues that these findings support the application of active appreciation analysis only to the business, not the real estate.

But the superior court also determined that it was "not clearly possible to separate the business ... from the land and building associated with the business." It found that "the land [had] been refinanced over the years to accommodate the business." These two findings, neither of which Williams directly challenges,[45] and which we review for clear error,[46] support the superior court's consideration of the "land and business as a single entity." A finding is clearly erroneous if this court is "left with a definite and firm conviction based on the entire record that a mistake has been made."[47] Given that the record supports the court's findings, we cannot say that the superior court clearly erred in finding that both the business and the real property on which it sits actively appreciated in value during the marriage. We therefore affirm the superior court's valuation.

### E. The Superior Court Did Not Abuse Its Discretion By Awarding Attorney's Fees To Day.

■ Finally, the superior court awarded Day one-half of her attorney's fees, or $10,406, noting that "Ms. Day's current income-producing capabilities are significantly less than [those] of Mr. Williams." Williams argues that the award of attorney's fees was

---

42. Williams does not contest the superior court's active appreciation valuation of the business component, however. .

43. *Schmitz v. Schmitz*, 88 P.3d 1116, 1125 (Alaska 2004) (quoting *Harrower v. Harrower*, 71 P.3d 854, 857–58 (Alaska 2003)).

44. *Harrower*, 71 P.3d at 858 (quoting Brett R. Turner, Equitable Distribution of Property § 5.22, at 236 (2d ed. 1994)).

45. He argues that most of the significant structural improvement occurred before the marriage. But that observation is not inconsistent with the superior court's findings.

46. *Schmitz*, 88 P.3d at 1122.

47. *Farmer v. Farmer*, 230 P.3d 689, 693 (Alaska 2010) (quoting *Casey v. Semco Energy, Inc.*, 92 P.3d 379, 382 (Alaska 2004)).

an abuse of discretion because the size of Day's share of the marital assets negated any possible need for attorney's fees. He also draws our attention to the superior court's remark that "both parties litigated [the case] ... on a fairly equal plane.... likely due to the significant interim payments made by Mr. Williams for and to Ms. Day." He then argues that the attorney's fee award was, in essence, a requirement that he "pay [Day's] attorney's fees a second time."

The award of attorney's fees in a divorce action rests within the broad discretion of the trial court, and we will not disturb an award on appeal unless it is "clearly unjust." [48] "In Alaska, 'cost and fee awards in a divorce are not to be based on the prevailing party concept, but primarily on the relative economic situations and earning powers of the parties.'" [49] The rationale is that "in divorce actions[,] 'the purpose of awarding attorney's fees is to assure that both spouses have the proper means to litigate the divorce action on a fairly equal plane.'" [50] Here, the superior court appropriately based the attorney's fee award on the relative earning powers of the parties. It is undisputed that Day earned substantially less than Williams, and the fact that Williams made payments for Day's living expenses does not undermine the rationale behind the superior court's decision to award Day one-half of her attorney's fees. We find no abuse of discretion in the superior court's award of attorney's fees to Day.[51]

## V. CONCLUSION

We AFFIRM in part, REVERSE in part, VACATE in part, and REMAND for further proceedings consistent with this opinion. We do not retain jurisdiction.

CHRISTEN, Justice, not participating.

48. *Ethelbah v. Walker*, 225 P.3d 1082, 1086 (Alaska 2009) (citing *Brotherton v. Brotherton*, 941 P.2d 1241, 1244 (Alaska 1997)).

49. *Rodvik v. Rodvik*, 151 P.3d 338, 351 (Alaska 2006) (quoting *Lone Wolf v. Lone Wolf*, 741 P.2d 1187, 1192 (Alaska 1987)).

50. *Id.* (quoting *Lone Wolf*, 741 P.2d at 1192).

51. However, the court may reconsider its attorney's fee award if after reconsidering its property distribution it determines that its fee award should be adjusted.