*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| TAMMY WANNER-BROWN, | ) | |
| | ) | Supreme Court No. S-14814 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-11-09866 CI |
| v. | ) | |
| | ) | O P I N I O N |
| CONRAD BROWN, | ) | |
| | ) | No. 6844 – November 22, 2013 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Eric A. Aarseth, Judge.

Appearances: Justin Eschbacher and G.R. Eschbacher, Law Offices of G.R. Eschbacher, Anchorage, for Appellant. Carl D. Cook, Law Office of Carl D. Cook, P.C., Anchorage, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, Bolger, Justices.

STOWERS, Justice.

## I. INTRODUCTION

Conrad Brown and Tammy Wanner-Brown married in 1992. In 2011 Conrad filed for divorce. A trial was scheduled to resolve both child custody and property disputes. On the first day of trial, the parties filed an agreement resolving the custody issues. The trial proceeded regarding the division of property. A major issue

involved Conrad's State of Alaska retirement medical benefits. For purposes of defining retirement benefits, the State has four "tiers." What tier an employee belongs to is dependent on the employee's start date.[1] The main difference between the tiers is the age at which benefits may be received — Tier 1 employees can receive full retirement benefits, including medical benefits, at the age of 55 while Tier 2 employees must wait until the age of 60. Because a Tier 1 employee can begin receiving benefits five years earlier, the total value of this status is worth much more than the value of Tier 2 status.

Before his marriage, Conrad had briefly worked for the State at a time when all employees in his position were classified as Tier 1. Conrad cashed out his retirement benefits when he left the position after six months. After he married Tammy, he became re-employed with the State and completely re-earned his retirement benefits. Conrad was still classified by the State as Tier 1 because of his prior employment with the State. The present value of his medical benefits under a Tier 1 calculation was $248,350 as of the date of trial.

The superior court decided Conrad was a Tier 2 employee for purposes of valuing and distributing marital assets because "[t]he Tier 1 eligibility was earned prior to the marriage" and "[t]he marital assets (i.e. time, risk, money) spent to allow the plaintiff to vest with the State of Alaska were no different for a Tier 1 than for a Tier 2." The court determined that Conrad's Tier 2 retirement benefits had a present value of $170,879.39 and awarded these benefits to Conrad. The court awarded Tammy the couple's two rental properties and all of the marital debt, and ordered her to pay Conrad an equalization payment of $11,590 within a year. The court also ordered Tammy to

---

[1]    Tier 1 includes employees who started before July 1986; Tier 2, before July 1996; Tier 3, before July 2006; and Tier 4, since July 2006. Public Employees' Retirement System (PERS) Plan Comparison Chart, http://doa.alaska.gov/drb/pdf/pers/perstieri-ivchart.pdf (last visited Nov. 13, 2013).

refinance the two rental properties within one year to remove Conrad's name from the titles and debt.

Tammy appeals, arguing that: (1) Conrad's retirement classification should have been Tier 1, not Tier 2; (2) the court miscalculated the value of the medical benefits even if they were Tier 2; (3) the court erred by not taking into consideration the cost of selling one of the properties even though the property division had the practical effect of requiring her to sell it; and (4) the court gave her an impossibly short time to refinance the loans on the rental properties. We hold that the superior court erred by valuing Conrad's retirement medical benefits as Tier 2 instead of Tier 1 and remand for the court to recalculate these benefits and reconsider its property division. Thus, we decline to reach Tammy's other points on appeal.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Conrad Brown and Tammy Wanner-Brown were married in September 1992. The couple had two children together, who are now ages 17 and 13. Tammy was employed for many years as a general manager at a Days Inn in Anchorage, and Conrad worked as a probation officer in Palmer. In 2010 Tammy's reported wages were $58,500 and Conrad's reported wages were $47,547.

Before Conrad and Tammy separated, they had accumulated a significant amount of debt. The family owned a home on which they owed $255,287.66. They also owned two rental properties: a duplex on Duben Drive and a condominium on Reka Drive. The duplex was built for the couple by Tammy's father, and the condominium was inherited from Conrad's parents. Conrad and Tammy mortgaged both properties, and they owed $254,378.77 on the duplex and $45,377 on the condominium. In addition, the couple had $28,149 in credit card debt. Conrad and Tammy also had a loan from Wells Fargo for $13,188.66, which they used to buy a travel trailer, and a debt to

J.C. Penney on which they owed $1,142.22. They had car loans on both of their vehicles — $8,303 on Tammy's Hyundai and $8,270 on Conrad's Chevy. Finally, the couple had numerous smaller debts owed to service providers, banks, and various third parties. The minimum payment for the credit card debt and the couple's larger debts was $1,055 a month.

In March 2011 Conrad left the family home. In June he ceased contributing to the payments on the family's debts, and the family home went into foreclosure.

## B.     Proceedings

Conrad filed for divorce in May 2011. Tammy asked the superior court for an equitable division of the family's property. She submitted a proposed property division table in which the Reka condominium would be sold and the proceeds used to pay off the couple's debts. She also submitted an alternate property division proposal in which Conrad would receive the Reka condominium and she would be paid an equalization payment. In both proposals she suggested that the court value Conrad's medical retirement benefits at $248,350, and she included a statement from financial planning expert witness Sheila Miller supporting this valuation. Conrad also submitted two proposed property divisions. In the first he suggested that the court give no value to his medical retirement benefits and that it award the Reka condominium to him. In the second he proposed that his medical retirement benefits be valued at $148,651, that Tammy receive the Reka condominium, and that she pay him a $25,281 equalization payment.

The superior court conducted a trial regarding the value of Conrad and Tammy's real property, household items, and employment benefits.[2] Miller testified at length regarding Conrad's retirement benefits. She explained that Conrad would receive

---

[2]     Conrad and Tammy came to an agreement on child custody issues.

Public Employees' Retirement System (PERS) medical retirement benefits from the State when he turned 55. Miller described her calculations regarding the monetary value of the medical retirement benefits Conrad would receive through his PERS account. Miller stated that she had followed the procedure this court prescribed in *Hansen v. Hansen*,[3] *Ethelbah v. Walker*,[4] and *Sparks v. Sparks*[5] for determining the value of those medical benefits. She described how the benefits were "basically medical insurance provided at the cost of the plan — the plan underwrites a hundred percent of the cost — to retirees in the PERS system."

Miller explained that the State has four tiers which determine the age at which an employee can begin to receive his benefits. Because Conrad was classified by the State as Tier 1, he will receive his medical benefits starting at age 55. Miller described how one calculates the value of these benefits:

> [Y]ou take the current premium, you apply inflation factors for what you think it's going to grow by, and then you apply discount factors, to bring that future cash flow stream back to a present value in today's dollars, and total up the sum of the numbers and you basically have a present value.

Miller also explained the actuarial computation method she used to compute the benefits' monetary value based on Conrad's life expectancy. Under this method, Miller looked at the probability that Conrad will live to a designated year, starting with a 96.6% chance he will live to retirement at age 55 and continuing until a 0.00005% chance he will live to be 110 years old. She then discounted the value of the medical benefits to him each year by the probability that he will live to that age. Miller

---

    [3]     *Hansen v. Hansen*, 119 P.3d 1005 (Alaska 2005).

    [4]     *Ethelbah v. Walker*, 225 P.3d 1082 (Alaska 2010).

    [5]     *Sparks v. Sparks*, 233 P.3d 1091 (Alaska 2010).

concluded that the "present value" of the Tier 1 medical retirement benefits was $248,350.

Miller also analyzed Conrad's Tier 1 status. Miller explained that Conrad was Tier 1, not Tier 2, because he had worked for the State for six months at a time when his position was classified as Tier 1. Then Conrad resigned from State employment and cashed out his retirement benefits. Conrad later married Tammy and subsequently became re-employed by the State. At the time he became re-employed by the State, all new employees in his position were classified as Tier 2, but Conrad retained his original Tier 1 classification because of his original Tier 1 service with the State. However, because he had cashed out his original retirement benefits, the time period for the vesting of his benefits started over again. Thus, all of the vesting time that counted towards Conrad's earning of his future benefits occurred during the marriage. Miller reasoned that "[Conrad's] Tier 1 classification, as of the date of marriage, was worthless. There was no value to it . . . . It became valued when he earned five years of service, which he did during the marriage." Miller noted that the vesting period for Tier 1 and Tier 2 are exactly the same. Conrad was only able to acquire his Tier 1 status because he worked for the State before the State created the Tier 2 classification.

The court "accept[ed] Ms. Miller's testimony regarding the valuation of the plaintiff's retiree medical benefit."[6] However, the court rejected Tammy's argument that the marital retirement benefits should be valued as Tier 1 instead of Tier 2. The court decided that "[t]he Tier 1 eligibility was earned prior to the marriage" because "[t]he marital assets (i.e. time, risk, money) spent to allow the plaintiff to vest with the State of Alaska were no different for Tier 1 than for Tier 2." The court concluded that "[w]hat the Plaintiff earned during his work for the State of Alaska while married was effectively

_____

[6]     Conrad presented no expert witness at trial.

a Tier 2 retirement as far as the defendant is concerned." The court valued Conrad's Tier 2 retirement medical benefits as $170,879.36 and determined the benefits start when Conrad becomes 60 years old.

The superior court found that an equal property division would be "fair and equitable considering the current financial standing and income-earning capability of each party." Among other items, the court awarded Conrad his retirement medical benefits. The court awarded Tammy both the Duben duplex and the Reka condominium, all of the debt associated with these properties, all other marital debt, and ordered her to pay Conrad an equalization payment of $11,590 within a year. Finally, the court ordered Tammy to refinance the loans on both rental properties to remove Conrad's name from the titles and the debt. The court gave her 12 months to accomplish this and stated that if "for some reason 12 months is not enough time" to complete the refinancing, she could apply for more time if she could show she had diligently attempted to complete the refinancing.

Tammy moved for reconsideration. She argued that: (1) the retirement medical benefits should have been valued as Tier 1, not Tier 2; (2) the court miscalculated the retirement medical benefits even if they were to be considered as Tier 2; (3) the court should have deducted the cost of selling the Reka condominium from her award because the award had the practical effect of forcing her to sell the condominium to pay her debts; and (4) the court overlooked a material fact when it ordered her to refinance within one year because the family home was currently undergoing a short sale in lieu of foreclosure and she would not be able to refinance for a minimum of two years. Conrad responded that his benefits should be considered Tier 2, not Tier 1; that Tammy never raised the issue of the Reka sales expenses before her motion to reconsider; and that because Tammy had mismanaged the property during the marriage, she should now shoulder the burden of its depreciated value.

The superior court ultimately declined to alter its original property distribution. It found that the concerns about the sale expenses of the Reka condominium were "post-trial factual issues that should have been addressed at trial." It ruled that it would only consider extending the time limit for refinancing after the original time limit elapsed and Tammy showed she had made "due diligent efforts" to refinance, but the court agreed to give Tammy an extra three months to make the equalization payments "in anticipation of the sale or refinance of the Reka property." Conrad moved for attorney's fees and Tammy opposed. Tammy filed a motion for relief from judgment pursuant to Alaska Civil Rule 60(b); she also asked for more time to make the equalization payment, and she requested an evidentiary hearing.

The court denied Conrad's motion for attorney's fees, Tammy's request for an evidentiary hearing, and Tammy's request for Rule 60(b) relief. It granted Tammy another three-month extension of time for the equalization payment, but stated that it would not grant any further extensions "regardless of the status of sale or refinance of the Reka property." Finally, the court found that Tammy was choosing to sell the Reka property, not being forced to, and that it would not "re-adjust its findings to correct for her choices."

Tammy appeals, arguing that: (1) Conrad's retirement classification should have been Tier 1, not Tier 2; (2) the superior court miscalculated the value of the medical benefits even if they were Tier 2; (3) the superior court erred by not considering sales costs for the Reka condominium because its property division had the practical effect of requiring her to sell the property; and (4) she was given an impossibly short amount of time to refinance the properties awarded to her.

## III. STANDARD OF REVIEW

When dividing marital property, the court (1) characterizes the property as marital or non-marital, (2) finds the value of the property, and then (3) divides the

property equitably.[7]  The characterization of property as marital involves questions of both law and fact.[8]  Questions of law are reviewed *de novo* using our independent judgment; findings of fact are reviewed for clear error.[9]  "A finding of fact is clearly erroneous when 'a review of the record leaves the court with a definite and firm conviction that the superior court has made a mistake.' "[10]  Once the court has characterized the asset, its valuation of the asset is a factual determination that we also review for clear error.[11]

We review the court's actual division of the property — once it has characterized and valued the property — for abuse of discretion.[12]  "An abuse of discretion occurs if the court considers improper factors, fails to consider relevant statutory factors, or assigns disproportionate weight to some factors while ignoring others."[13]

## IV.  DISCUSSION

The superior court concluded that Conrad's Tier 1 retirement classification was not marital property, and when it calculated the value of Conrad's retirement benefits, the court valued the benefits as though they were Tier 2.  Tammy argues that

---

[7]  *Beals v. Beals*, 303 P.3d 453, 458-59 (Alaska 2003).

[8]  *Id*. at 459.

[9]  *Id*.

[10]  *Chesser v. Chesser-Witmer*, 178 P.3d 1154, 1156-57 (Alaska 2008) (quoting *Borchgrevink v. Borchgrevink*, 941 P.2d 132, 134 (Alaska 1997)).

[11]  *Beals*, 303 P.3d at 459.

[12]  *Hansen v. Hansen*, 119 P.3d 1005 (Alaska 2005).

[13]  *Id*. at 1009.

according to *Hansen v. Hansen*, the portion of retirement benefits that is acquired with marital resources is marital property, regardless of when the tier classification was achieved.[14] Thus, Tammy contends, because the entire vesting period for Conrad's retirement benefits occurred during the marriage, the entire benefits are marital property, including the Tier 1 classification. Tammy is correct.

We have held that medical retirement benefits obtained during a marriage are marital property to be valued and divided upon divorce.[15] "That the benefits cannot be transferred is irrelevant because 'market transferability is not a prerequisite to determining value for property division.' "[16]

In *Hansen* we considered a situation very similar to the case here.[17] One spouse had a PERS retirement account which she had earned and cashed out prior to the marriage.[18] She repurchased her PERS benefits during the marriage with marital funds.[19] We concluded that "[f]or purposes of valuing [the spouse's] retirement health insurance benefit, work she performed before the marriage must be treated as having been

---

[14] *Id*.

[15] *Id*. at 1015; *see also Burts v. Burts*, 266 P.3d 337, 341 (Alaska 2011); *Sparks v. Sparks*, 233 P.3d at 1091, 1097; *Ethelbah v. Walker*, 225 P.3d at 1087-90; *Kinnard v. Kinnard*, 43 P.3d 150, 156 (Alaska 2002). Conrad "disputes that any value should be assigned to the retiree medical benefits because he will not receive the benefit until he retires." However, as the above cited cases clearly show, Alaska law requires that retiree medical benefits earned during the marriage be given a value for purposes of divorce property distribution.

[16] *Hansen*, 119 P.3d at 1015 (internal punctuation omitted) (quoting *Martin v. Martin*, 52 P.3d 724, 731 (Alaska 2002)).

[17] *Id*. at 1014-16.

[18] *Id*. at 1014.

[19] *Id*. at 1014-15.

performed during the marriage because [the spouse] used marital funds to buy back this part of the benefit."[20] We then directed the superior court to determine the coverture fraction, or the number of years worked during the marriage divided by the total number of years worked to obtain the benefits, and to use this fraction to determine what percent of the retirement benefits was marital.[21] We stated explicitly that "[t]o the extent [the spouse] used marital funds to buy back health benefits for work performed before the parties began living together, that period of work must be treated as part of the period of coverture."[22]

Sheila Miller, Tammy's expert on financial planning, testified that she attempted to follow *Hansen* when valuing Conrad's benefits. She reasoned that Conrad's "Tier 1 classification, as of the date of marriage, was worthless. There was no value to it . . . . It became valued when he earned five years of service, which he did during the marriage." Thus, she concluded the entirety of the Tier 1 benefits was marital. The superior court disagreed and found the Tier 1 classification to be pre-marital because "[t]he marital assets (i.e. time, risk, money) spent to allow the plaintiff to vest with the State of Alaska were no different for Tier 1 than for Tier 2." Therefore, the court decided, "[w]hat the Plaintiff earned during his work for the State of Alaska while married was effectively a Tier 2 retirement as far as the defendant is concerned."

We conclude that Conrad's medical retirement benefits should have been valued as Tier 1 because, as we stated in *Hansen*, if retirement benefits are cashed out before the marriage and then repurchased or re-earned with marital assets, they become

---

[20]    *Id*. at 1015.

[21]    *Id*.

[22]    *Id*.

marital property.[23] Here, though Conrad's Tier 1 status was earned prior to the marriage, he re-earned the benefits during the marriage with marital resources (his time). As in *Hansen*, the period of work during which the benefits were originally earned "must be treated as part of the period of coverture."[24] Thus, the court erred when it classified Conrad's Tier 1 status as pre-marital property. Due to this error, the court's valuation of his benefits was clearly erroneous because its calculations were based on Tier 2 status. We reverse the superior court's Tier 2 finding and its related valuation of benefits and remand for the court to recalculate the value of the medical retirement benefits under a Tier 1 calculation. Because this new calculation will substantially change the value of the marital estate,[25] the superior court will need to reconsider its overall property division to accommodate this change in valuation. We therefore do not reach the rest of Tammy's arguments.[26, 27]

---

[23]     *Id.*

[24]     *Id.*

[25]     Under the court's Tier 2 valuation, the retirement medical benefits were worth $170,879.36. Under Sheila Miller's undisputed Tier 1 valuation, the benefits had a present value of $248,350.

[26]     Though we do not reach Tammy's argument that it was an abuse of discretion for the superior court to give her only one year to refinance the couple's two rental properties, given that the family home had just undergone a short sale, which clearly was going to negatively affect Tammy's ability to refinance, we are concerned that Tammy may have been ordered to accomplish a near impossibility. We remind the trial courts that they should carefully consider the difficulties of refinancing after a party has experienced a very negative credit event such as a short sale or a foreclosure when ordering or otherwise effectively requiring a party to refinance marital property following a divorce.

[27]     We are also troubled by the superior court's decision not to consider the
(continued...)

## V.  CONCLUSION

We REVERSE the superior court's finding that Conrad's Tier 1 medical retirement benefits should be valued as Tier 2 and REMAND for a new valuation and property division.

---

[27](...continued)
sales costs of the Reka condominium during the property division. The court knew that the family home was underwater (the balance owed on the home loan exceeded the value of the property) and that the home was in the process of being sold at short sale. The court knew that Tammy's credit score would be severely negatively impacted by this short sale and by missed payments on the couple's other debts, that it was awarding her all of the couple's debt, and that it was requiring her to make an $11,590 equalization payment to Conrad within a year's time. In her motion for reconsideration, Tammy cited *Tollefsen v. Tollefsen*, 981 P.2d 568 (Alaska 1999) and argued that the superior court erred by not considering in its property distribution the costs she would incur associated with selling the Reka condominium. The superior court declined to change its property distribution, stating that Tammy "has made business choices about how to manage the Reka property. She elected to sell rather than rent or refinance. . . . The defendant's choices are just that, her choices."

This decision and rationale appear to be at odds with our decisions in *Day v. Williams*, 285 P.3d 256, 266-67 (Alaska 2012) (holding that the superior court's failure to consider the costs associated with a forced sale of real property prevented the property distribution from being just and fair), *Fortson v. Fortson*, 131 P.3d 451, 461 (Alaska 2006) (holding that if "a court order or external conditions force a party to sell" some of the property she has been awarded, the court must consider the costs associated with the sale), and *Tollefsen*, 981 P.2d at 572 (holding that "although the superior court expressly found that Mary was the economically disadvantaged party, the court's failure to make provision for the costs of repairs and sale of the real property awarded to Mary defeated its stated goal of awarding her the greater share of the marital estate").