Robert DAVILA, Appellant,

v.

Rita DAVILA, Appellee.

No. S–5551.

Supreme Court of Alaska.

July 1, 1994.

Allison E. Mendel, Mendel & Huntington, Anchorage, for appellant.

Kathleen C. Barron, Wasilla, for appellee.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS, COMPTON, JJ., and BRYNER, Justice pro tem.*

## OPINION

BRYNER, Justice pro tem.

This appeal, which arises from divorce proceedings between Robert and Rita Davila, presents issues concerning property valuation and spousal support. Robert challenges the superior court's valuation of certain marital property and contends that the court abused its discretion in awarding reorientation alimony to Rita. We affirm the property valuation and remand for further findings on alimony.

## I.  FACTS

On October 26, 1992, Rita and Robert Davila divorced after twenty-five years of marriage. They have four children, all of whom are emancipated. During the marriage, Rita took care of most domestic responsibilities. Since 1980, she worked a full time civil service job, and at the time of trial was employed as a GS–6 civilian employee in the accounting department at Fort Richardson. Robert was in the military for nineteen years until he retired in 1986. He later obtained a position as an aviation safety inspector with the Federal Aviation Administration and, at the time of the divorce, he was at the GS–13 pay level.

The parties took their first step toward separation in approximately January 1990, when they began occupying separate floors of their residence in Wasilla. They maintained this living arrangement until the time of trial. During this period, Robert paid all household bills, including the mortgage payments, car payments, and utilities. Rita bought food and other household items. The parties continued using joint accounts until May 1992, approximately three months before trial.

At the time of trial, the parties owned various items of personal property, their family residence, and a half-acre lot in Timberon, New Mexico. The trial court found that the parties were also owed money by Robert's sister. Robert and Rita each had a retirement account with the federal government, and Robert was receiving military retirement pay and disability pay. Each was paying ongoing debts.

The trial court valued the marital property and awarded a larger share of the estate to Rita based on her lower education and earning capacity. Rita received the family residence and Robert received the Timberon lot and the debt owed to the parties by his sister. The court initially awarded Rita four years of combined rehabilitative and reorientation alimony. On reconsideration, however, the court amended its order by eliminating the rehabilitative alimony and increasing the amount of reorientation alimony. The court also awarded Rita $2,000 in attorney's fees.

On appeal, Robert disputes the values that the court assigned to certain properties, arguing that the court overvalued property it gave to him and undervalued property it gave to Rita. These errors, according to Robert, resulted in an award of marital property even more favorable to Rita than the disproportionate award the court contemplated. Although Robert does not challenge the disproportionate division of property as such, he does rely on it as a basis for questioning the trial court's award of reorientation alimony. Robert contends that, with the correct property values factored in, the property award is so favorable to Rita that it renders reorientation alimony unjust and unnecessary. Robert further argues that, even if the court did not err in its property valuation, the record would not support its alimony order.

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

## II. DISCUSSION

### A. *Valuation of Property*

■ The trial court's valuation of property when dividing marital assets is a factual determination and will be reversed only if clearly erroneous. *Jones v. Jones,* 835 P.2d 1173, 1175 (Alaska 1992). A finding may not be set aside as clearly erroneous unless the reviewing court has a definite and firm conviction that a mistake has been made. *Williams v. Alyeska Pipeline Service Co.,* 650 P.2d 343, 347 (Alaska 1982).

### 1. *The Marital Home*

■ The trial court valued the Davila's marital residence at $100,000 and awarded it to Rita, subject to the outstanding mortgage, which was then approximately $83,000. Robert argues that the trial court's valuation of the residence was erroneous because the tax appraisal at the time of trial was $128,000 and the house was being advertised for sale at $120,000. Robert claims that, since no other evidence of value was presented, the residence should have been assigned a value of no less than $120,000.

Robert mistakenly views the evidence in the light most favorable to himself. Although appraised at $128,000 for tax purposes, the house was on the market at that price for a significant period of time and had not sold. Shortly before trial, the price was reduced to $120,000, and it remained unsold. At trial, Rita testified that she thought the house was worth "[a] lot less" than its current asking price. In addition, Robert listed the estimated value of the house at $100,000 in response to a pretrial interrogatory. On cross-examination, while acknowledging that his estimate was based on "[r]eally nothing" and was "just what I thought," Robert testified that he thought the estimate remained valid "[i]n the present market." Although saying that he had no opinion on what the house could actually be sold for "at the moment," Robert testified that he believed it could be sold for less than its assessed value.

Considering the entire record, we conclude that the trial court's valuation of the marital home was not clearly erroneous, and we affirm the trial court's finding.

### 2. *The Debt from Robert's Sister*

■ In 1980, Robert's sister evidently experienced difficulty making payments on her house in Bexar, Texas. To prevent her from losing the house, Robert and Rita bought it from her, paying $2,000 and taking over payments. They kept the house as a rental property until Robert's sister's financial situation improved; then, in 1990, they reconveyed it to her. The trial court concluded that, as a result of these transactions, Robert's sister owed the Davilas $2,000. The court awarded Robert the right to collect the debt.

Robert argues that the trial court clearly erred in setting a $2,000 value on his "unsupported hope that he might someday be paid by his sister." Again, however, Robert's argument draws selectively from the record. At trial, the parties offered conflicting testimony about the house. Robert testified that he purchased the house from his sister when she could not make the payments and reconveyed it in 1990. When asked whether his sister owed him any money from the transaction, Robert stated, "She did, but it's been so long that nothing's come of it." He testified that "[t]here was really no promise to pay anything, it was just what ... she could pay. I was hoping to get back at least $2,000, but I didn't even get that." In contrast, Rita testified that Robert's sister owed them $10,000 for the transaction, indicating that Robert's sister might have paid the money had Robert "fought her for it," but that Robert "didn't want to."

"[I]t is the function of the trial court, not of this court, to judge witnesses' credibility and to weigh conflicting evidence." *Parker v. Northern Mixing Co.,* 756 P.2d 881, 892 (Alaska 1988). As stated previously, we will not set aside a finding as clearly erroneous unless we have a definite and firm conviction that a mistake has been made. *Williams v. Alyeska Pipeline Service Co.,* 650 P.2d 343, 347 (Alaska 1982). From the foregoing testimony, the trial court could have reasonably concluded that Robert's sister owed the Davilas money as a result of the purchase and reconveyance of her Texas home and that the debt remained unpaid only because of Rob-

ert's reluctance to press the issue. Giving Robert the benefit of the doubt, the court could have also reasonably concluded that the remaining debt amounted to $2,000. We find no error and affirm the trial court's finding.

### 3. The Timberon Lot

■ The trial court originally fixed the value of the parties' lot in Timberon, New Mexico, at $8,000. It gave the lot to Robert. After Robert moved for reconsideration, the court revised the value to $6,000. On appeal, Robert challenges this value as unsupported, arguing that the only value substantiated by the record is $4,000, the amount indicated in the most recent tax assessment on the Timberon property.

The trial court, however, properly expressed doubt concerning the reliability of the tax assessment, which purported to be based on a percentage of the "full value" of the property but did not explain what "full value" meant. Moreover, testimony was presented at trial supporting the $6,000 value that the trial court ultimately determined to be the property's value. Rita testified that the Davilas originally bought the lot for $8,000. Robert, on the other hand, stated in his trial brief that the value of the lot was $6,000. At trial, he attempted to equivocate. On direct examination, he stated that he had "no idea" what the market value of the property might be. Yet when the trial court asked Robert the basis for the $6,000 value listed in his trial brief, he stated, "Speculation. We paid $5,000, and I figure it would

be at least—we'd be able to get $1,000 more out of it."

Taking Robert's testimony in conjunction with Rita's, the trial court could reasonably conclude that the Timberon property was worth more than its $4,000 assessed tax value. The court could also reasonably opt to set the value at $6,000, Robert's own estimate, instead of $8,000, Rita's estimate.[1] The trial court's finding was not clearly erroneous.

### B. Reorientation Alimony

■ Rita's trial brief requested an award of rehabilitative alimony to assist her in completing a bachelor's degree in labor management. The trial court awarded Rita four years of rehabilitative support "to allow her a chance to gain a degree in accounting or business," as well as an additional amount for reorientation alimony. After reconsideration, however, the court concluded that it "erred in its determination that both rehabilitative and reorientation alimony should be awarded." The court ordered Robert to pay reorientation alimony for four years, with payments of $800 per month for the first two years and $700 per month for the second two years. The court stated that the purpose of the award was "to aid [Rita] to adjust to new financial circumstances and a new life style." This award will be reviewed for abuse of discretion. Money v. Money, 852 P.2d 1158, 1163 (Alaska 1993).

Alaska Statute 25.24.160(a)(2) directs the trial court to "fairly allocate the economic effect of divorce" by considering certain fac-

---

1. Indeed, the trial court's findings on reconsideration reflect the court's belief that, in selecting $6,000 instead of $8,000, it was adopting the value that Robert himself had proposed:

    [Robert] did testify that a tax statement for the lot indicated a taxable value of $1,333 (Exhibit G). The exhibit G also indicates the taxable value is considered to be 33⅓% of "Full Value." There was no evidence to the court as to the meaning of [the] term "Full Value" and as to how the "Full Value" relates to actual market value. The original purchase price of $8,000 is not, therefore, an inappropriate value for determination of market value.

    In an abundance of caution, however, it appears appropriate to reduce the value of the Timberon property awarded from the original $8,000 purchase price to $6,000. This is ex-

    actly half-way between the "Full Value" and the original price of $8,000.

    On appeal, Robert condemns the trial court for merely "splitting the difference" between $4,000 and $8,000, a valuation technique he asserts was discredited by this court in Matson v. Lewis, 755 P.2d 1126, 1128 (Alaska 1988). This argument lacks merit. In Matson, we disapproved of a trial court decision to "split the difference" between two different values the parties had proposed, only one of which was supported by the evidence. Id. In contrast, here, all three of the values in issue, the $4,000 assessed value, the $6,000 value adopted by the court based on Robert's estimate, and the $8,000 value reflected in Rita's testimony, find support in the evidence. Matson is inapposite under these circumstances.

tors, among which are the parties' earning capacities, educational backgrounds, employment skills, work experiences, length of absence from the job market, and custodial responsibilities for children during the marriage. To this end, the court is expressly empowered to order alimony "as may be just and necessary without regard to which of the parties is in fault[.]" [2]

■ Our decisions have recognized reorientation alimony as appropriate to "allow the requesting spouse an opportunity to adjust to the changed financial circumstances accompanying a divorce." *Richmond v. Richmond,* 779 P.2d 1211, 1215 n. 6 (Alaska 1989) (citing *Dixon v. Dixon,* 747 P.2d 1169, 1173 (Alaska 1987)). We have indicated, however, that reorientation alimony should ordinarily be awarded only "when the property settlement will not adequately meet the parties' reasonable needs. *Id.* Furthermore, given its inherently transitional nature, reorientation alimony may properly be awarded only for relatively short periods of time.[3]

■ Our decisions have also recognized that a separate form of temporary support, rehabilitative alimony, may be appropriate in some cases "for a specific purpose and a short duration even with an adequate property division[.]" *Id.* at 1215 (citing *Bussell v.*

*Bussell,* 623 P.2d 1221, 1223–24 (Alaska 1981)). While an award of rehabilitative alimony need not be predicated on a finding that the parties' needs cannot be met through the division of marital property, this form of alimony is narrowly restricted "to job training or other means directly related to entry or advancement within the work force," and "[t]he party seeking rehabilitative alimony must intend to use it for such purposes." *Id.* (citing *Schanck v. Schanck,* 717 P.2d 1, 5 (Alaska 1986), and *Miller v. Miller,* 739 P.2d 163, 165 (Alaska 1987)).

■ Although reorientation and rehabilitative alimony serve separate goals, require different findings, and are consequently distinct forms of temporary support, they are not mutually exclusive; in some instances, when supported by the record, both may be appropriate. *See Money,* 852 P.2d at 1164 (approving award involving both rehabilitative and reorientation support although the trial court designated award as only rehabilitative).

■ In all cases, however, an award of alimony must be accompanied by adequate findings, particularly with respect to the financial needs and abilities of both parties:

A trial court is required to make specific findings to support a determination that an

---

**2.** AS 25.24.160(a) provides as follows:

In a judgment in an action for divorce or action declaring a marriage void or at any time after judgment, the court may provide

. . . .

(2) for the recovery by one party from the other of an amount of money for maintenance, for a limited or indefinite period of time, in gross or in installments, as may be just and necessary without regard to which of the parties is in fault; an award of maintenance must fairly allocate the economic effect of divorce by being based on a consideration of the following factors:

(A) the length of the marriage and station in life of the parties during the marriage;

(B) the age and health of the parties;

(C) the earning capacity of the parties, including their education backgrounds, training, employment skills, work experiences, length of absence from the job market, and custodial responsibilities for children during the marriage;

(D) the financial condition of the parties, including the availability and cost of health insurance;

(E) the conduct of the parties, including whether there has been unreasonable depletion of marital assets;

(F) the division of property under (4) of this subsection; and

(G) other factors the court determines to be relevant in each individual case.

**3.** Reorientation alimony may be appropriate for a transitional period to provide supplemental support to a spouse who needs time to sell property the spouse is awarded which is not appropriate to the spouse's current needs or financial status. *See Money,* 852 P.2d at 1163 (reorientation alimony awarded to aid spouse during period needed "to organize the considerable non-liquid and non-income producing property being distributed to her from the marital estate"). Reorientation alimony might also be justified when a spouse requires time to get a job appropriate to the spouse's existing skills. In view of these and similar purposes, it is difficult to imagine circumstances under which an award of reorientation alimony extending for longer than one year would be justified.

award of alimony is just and necessary. *Jones v. Jones,* 835 P.2d 1173, 1179 (Alaska 1992).... Although a trial court need not make findings regarding every factor, we have remanded awards of alimony when there is an insufficient analysis of the needs of the alimony recipient or the means of the paying party. *Jones,* 835 P.2d at 1179; *Renfro v. Renfro,* 848 P.2d 830, 834 (Alaska 1993).

*Gallant v. Gallant,* 876 P.2d 1084, 1087 (Alaska 1994).

In the present case, the trial judge made findings regarding the earning capacity, job skills, and educational background of each party. At the time of trial in August 1992, Rita was forty-three years old and Robert was forty-six years old. Rita's yearly salary was approximately $21,000 plus a twenty-five percent non-taxable COLA, yielding $1,516 in net monthly pay. Robert's yearly salary was $49,290 plus a twenty-five percent non-taxable COLA, yielding $3,200 in net monthly pay; in addition, he received $270 per month in disability pay and $639 per month in military retirement, for total monthly earnings of $4,109.

Rita delayed her career plans during the marriage in the interests of raising her children and subordinated her career to Robert's. During the marriage, Robert received a number of higher educational degrees while Rita received an associate's degree. At the time of trial, Rita was studying for a bachelor's degree, which she expected to complete in five years at the current rate of taking two classes per semester while working full time. She could not advance in her current job without higher education. The trial court found that Rita left the marriage with vastly inferior job skills and earning power than Robert. The court's finding of economic disparity is amply supported by the record. This is precisely the "economic impact of divorce" which AS 25.24.160(a)(2) directs the trial court to consider in awarding spousal support. The trial court further found that

[the] parties do not have sufficient liquid assets, nor property which can be converted to liquid assets to properly allocate an equitable division of property between plaintiff and defendant. Although the property division, including the granting of the parties['] residence to plaintiff, is more favorable to plaintiff, the equities are still not in her favor.

This finding is also supported by the record and is not clearly erroneous.

Based on these findings, the court concluded that Rita was entitled to reorientation alimony and ultimately ordered Robert to pay Rita $800 per month for two years and $700 per month for two additional years. Nevertheless, in issuing its order, the court did not specifically address Rita's needs: while generally indicating that the alimony was meant to aid Rita to "adjust to new financial circumstances," the court did not specify the nature of the financial circumstances Rita would face or the scope of the adjustment she would be required to make. More particularly, the court failed to explain why it selected the monthly payments specified in its order, and how it concluded that the duration of those payments should be fixed at four years. Nor did the court specifically address Robert's financial needs, his ability to pay the ordered alimony, or the impact that the payments could be expected to have on his own financial circumstances.

Finally, the trial court did not adequately explain its decision, on reconsideration, to eliminate rehabilitative alimony in favor of an increased award of reorientation alimony. Rita had expressly requested rehabilitative alimony to assist her in obtaining a college degree and had provided specific information to support her request. Relying on this information, the trial court originally awarded rehabilitative alimony. On reconsideration, however, the court rescinded the award, stating, without further clarification, only that "[t]he court apparently erred in its determination that both rehabilitation and reorientation alimony should be awarded." [4]

4. Under the circumstances, it appears that the trial court may have mistakenly believed that reorientation and rehabilitative alimony are mutually exclusive. As we have indicated in the text of this opinion, although each requires that separate prerequisites be met and involves a different purpose, the two forms of temporary support may be simultaneously awarded when the evidence establishes both to be just and necessary. *Money,* 852 P.2d at 1164.

The trial court's failure to address the foregoing issues with specificity in its findings precludes informed appellate review by this court of the disputed alimony award. For this reason, we must remand to the superior court for additional consideration of and findings on the issue of alimony.

## III. CONCLUSION

We AFFIRM the trial court's valuations of the family home, the debt from Robert's sister, and the Timberon lot. We REMAND the trial court's award of reorientation alimony to Rita for reconsideration and specific findings in conformity with this opinion.[5]

We further note that the trial court's order on reconsideration also summarily concluded that the court had "apparently erred in requiring that the [alimony] award come from Mr. Davila's military retirement." Although the court provided no reason for this conclusion, it apparently acted pursuant to 10 U.S.C. § 1408(e)(1) which prohibits payments to spouses from military retirement benefits in excess of fifty percent of the benefit. Given the absence of any express findings, however, it is unclear why the court vacated the award from Robert's military retirement in its entirety when it could have reduced the award to the statutorily acceptable level. It is similarly unclear why a pro rata share of Robert's military retirement could not have been awarded to Rita as part of the property division, without recourse to reorientation alimony. *See Chase v. Chase*, 662 P.2d 944, 946 (Alaska 1983).

This issue should be addressed by the parties and the trial court on remand.

5. In order to expedite the ultimate resolution of the case and avoid unnecessary expense to the parties, we retain jurisdiction over this appeal and direct the trial court to submit its additional findings to this court within forty-five days after the date of this opinion. Once the trial court submits its supplemental findings, the parties may file supplemental briefs. The additional briefs of both parties shall be due simultaneously within twenty days·after the date the trial court distributes its supplemental findings. The briefs may be filed in memorandum form and need not comply with the formal requirements of Appellate Rule 212. No further oral argument shall be heard unless otherwise ordered by this court.