NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| BENJAMIN S., | ) | |
| | ) | Supreme Court No. S-16007 |
| Appellant, | ) | |
| | ) | Superior Court No. 3PA-13-01722 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| STEPHENIE S. | ) | AND JUDGMENT* |
| | ) | |
| | ) | No. 1665 – January 31, 2018 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Vanessa White, Judge.

Appearances: Benjamin S., Houston, pro se, Appellant. Stephenie S., Colorado Springs, Colorado, pro se, Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

## I.    INTRODUCTION

This appeal arises from the divorce of Benjamin S. and Stephenie S.[1]  Both parties represented themselves at trial.  Benjamin filed for bankruptcy in the midst of the divorce proceedings.  The property division trial began after Benjamin received his bankruptcy discharge.  The superior court awarded the house and mortgage to Benjamin,

---

\*    Entered under Alaska Appellate Rule 214.

[1]    Because of a related case, we use initials in lieu of the parties' last names to protect the family's privacy.

allocating to Stephenie all of her marital student loan debt and a 401(k) she had accrued during the marriage. Benjamin challenges many elements of the property division related to: (1) the effect of the bankruptcy on the property division and trial; (2) the valuation and allocation of several items of property; (3) whether the economic effects of divorce were fairly allocated; and (4) the denial of his request for spousal support. He also claims that his disability rights were violated and that the superior court was biased against him. We remand certain aspects of the property division and affirm the superior court's findings in all other respects.

## II.    FACTS AND PROCEEDINGS

Benjamin and Stephenie were married in 1996 and had two children. Benjamin was an Air Force officer and became eligible for Social Security Disability benefits after his separation from the military. Near the end of the marriage Stephenie worked as a teacher and earned over $50,000 per year. She also attended graduate school and accumulated significant student debt. Benjamin received about $5,000 per month in veterans' benefits and Social Security Disability income.

The parties separated in June 2013 and Stephenie moved to Colorado with the children. She initially found work as a teacher, earning approximately $32,500 annually, and later began working as an office manager earning approximately $40,000.

Benjamin filed for divorce in July 2013. The parties reached an agreement regarding child custody, which the court approved in November 2013. The parents shared joint legal custody but Benjamin received primary physical custody of the older son and Stephenie received primary physical custody of the younger son.

Trial was scheduled for October 2014, but in September Benjamin filed for Chapter 7 bankruptcy, delaying the trial. Benjamin filed motions for reimbursement of certain child-related expenses under the parties' parenting plan, which the court held in

abeyance until trial. Benjamin received a debt discharge in his bankruptcy in January 2015, and the bankruptcy court continued the process of selling seized property.

The divorce trial to divide property and determine whether spousal support would be awarded was held in June 2015. The court allowed Stephenie to appear by telephone over Benjamin's opposition.

At the start of trial Benjamin questioned whether the court could divide the property when his bankruptcy was not fully resolved. The superior court explained that the automatic stay imposed by his bankruptcy filing had been lifted by the discharge and that there was no legal bar to proceeding. When Benjamin stated he was unsure whether he was ready to proceed with trial, the court offered another continuance. Benjamin decided to proceed despite his reservations, which he said were related more to his unspecified disability than the bankruptcy paperwork.

The court and the parties reviewed the marital assets and debts, including the marital home, other real property, and retirement accounts. The court and both parties worked from Benjamin's property spreadsheets with his list of marital assets and proposed valuation and division. The parties agreed that Benjamin should keep the house, but Benjamin argued that he should be awarded money for necessary upkeep to the home. He said he would have to repair the septic system and provide maintenance for an access road as conditions of the mortgage. Benjamin asked for a portion of a Great West 401(k) earned by Stephenie during the marriage; Stephenie requested the entire 401(k). Benjamin also requested spousal support.

The superior court granted the divorce and divided the marital estate in late June 2015. It found that Benjamin's annual income of about $59,400 was not likely to significantly increase in the future. The court found that Stephenie would likely be able to earn more than her present annual income of $40,000, but was unlikely to earn substantially more than Benjamin's annual income.

The court awarded Benjamin the marital home and mortgage. It did not credit him for post-separation mortgage payments he made while he was living in the home during the separation.[2] It allocated each party the value of certain assets that they had spent or sold during the separation. Neither of them could identify all of their personal property or establish fair market values, so the court ordered each to keep the items they currently possessed without assigning them a value.[3] Benjamin's bankruptcy had discharged many marital debts that therefore were not assigned by the court. Stephenie's marital student loan debt of $57,522 was allocated entirely to her.

The property division left Benjamin net assets worth $41,268 and Stephenie a net debt of $14,911. The superior court recognized that Stephenie would receive half of the proceeds from the sale of assets in Benjamin's bankruptcy. The court allowed her to keep up to $14,911 of those proceeds to make up for her net loss in the property division, but it required her to disgorge half of any excess to Benjamin.

The superior court denied Benjamin's request for spousal support because he had adequate income to meet his post-bankruptcy expenses and Stephenie was "not in a sufficiently strong financial position to pay spousal support." The court also denied Benjamin's two motions for child-related expenses. It noted that those debts might not have been discharged in bankruptcy but concluded that it would be inequitable to require Stephenie to pay them because the unequal property distribution left her such significant debt.

---

[2] *See Rodriguez v. Rodriguez*, 908 P.2d 1007, 1012-13 (Alaska 1995) (affirming denial of credit for post-separation mortgage payments where "any benefit [one spouse] . . . imparted to the marital estate was offset by the benefit he received from the estate by living [in the house] rent-free").

[3] A few specific items the parties had requested were allocated to them.

Soon after the trial Benjamin moved to amend the judgment under Alaska Civil Rule 52(b), seeking a number of changes in the property division. The court issued an amended decision, but the only change was to correct misspellings of Stephenie's name.

## III.    STANDARD OF REVIEW

The equitable division of marital assets involves three steps.[4] The first step is deciding what property is marital and therefore available for division. "Underlying factual findings as to the parties' intent, actions, and contributions to the marital estate are factual questions" which "are reviewed for clear error," but whether the superior court "applied the correct legal rule . . . is a question of law that we review de novo."[5] A finding is clearly erroneous when we are "left with a definite and firm conviction that the superior court has made a mistake."[6] Determining the value of the marital property is a factual determination reviewed for clear error.[7] Dividing the property equitably between the parties is reviewed for abuse of discretion.[8]

"We review for abuse of discretion a superior court's decision whether to give a credit to a spouse for payments made to maintain marital property, such as the

---

[4]    *Beals v. Beals*, 303 P.3d 453, 458 (Alaska 2013) (citing *Doyle v. Doyle*, 815 P.2d 366, 368 (Alaska 1991)). The three steps are: "(1) deciding what specific property is available for distribution, (2) finding the value of the property, and (3) dividing the property equitably." *Id.*

[5]    *Id.* at 459 (quoting *Hanson v. Hanson*, 125 P.3d 299, 304 (Alaska 2005)).

[6]    *Engstrom v. Engstrom*, 350 P.3d 766, 769 (Alaska 2015) (quoting *Ethelbah v. Walker*, 225 P.3d 1082, 1086 (Alaska 2009)).

[7]    *Id.*

[8]    *Id.*

family home."[9]

We review for abuse of discretion the decision not to award spousal support.[10] The underlying findings as to the spouses' need for and capacity to pay support are factual[11] and are reviewed for clear error.

A superior court's decision whether to permit a party to appear at trial via telephone is reviewed for abuse of discretion.[12]

## IV. DISCUSSION

Benjamin raises a long list of issues on appeal. He challenges the court's decision to proceed with the property division in light of his bankruptcy proceedings, a number of aspects of the property division, and its denial of spousal support. He also argues that the court violated unspecified rights under the Americans with Disabilities Act (ADA) and was biased against him.[13]

---

[9] *Stanhope v. Stanhope*, 306 P.3d 1282, 1287 (Alaska 2013) (quoting *Berry v. Berry*, 978 P.2d 93, 95 (Alaska 1999)).

[10] *See Ruppe v. Ruppe*, 358 P.3d 1284, 1289 (Alaska 2015) (quoting *Silvan v. Alcina*, 105 P.3d 117, 125 (Alaska 2005)).

[11] *See Davila v. Davila*, 876 P.2d 1089, 1094 (Alaska 1994) (requiring alimony awards to be accompanied by "adequate findings . . . with respect to the financial needs and abilities of both parties").

[12] *Silvers v. Silvers*, 999 P.2d 786, 789 (Alaska 2000) (citing *Gregg v. Gregg*, 776 P.2d 1041, 1044 (Alaska 1989)).

[13] Several of Benjamin's claims are waived for inadequate briefing. *Wright v. Anding*, 390 P.3d 1162, 1169 (Alaska 2017) (explaining that, although we "apply a more lenient standard to [self-represented] litigants," "[t]o avoid waiver, a [self-represented litigant . . . . must cite authority and provide a legal theory" (second alteration in original) (quoting *Casciola v. F.S. Air Serv., Inc.*, 120 P.3d 1059, 1062-63 (Alaska 2005))). These include his claim that the court erred in declining to consider a

(continued...)

We first address Benjamin's claims of judicial bias to determine if bias undermined any of the court's decisions. Benjamin claims the judge who presided over his case was biased against him. Most of his claims of bias essentially attribute malice or preference for Stephenie to decisions of the court which did not yield the result he sought. Benjamin's December 2015 motion to recuse the assigned judge for bias was denied, and the denial was affirmed on review by another judge. It is not before us in this appeal. " 'In order to prove a claim of judicial bias,' a party must show that the judge 'formed an opinion of him from extrajudicial sources.' "[14] Bias "should not be inferred merely from adverse rulings."[15] Benjamin has not proposed any extrajudicial source for the superior court's alleged bias or presented any evidence to that effect, and the record does not suggest that the court relied on such sources in forming its opinions. We therefore conclude that his allegations of bias are without merit.[16]

### A. The Property Division Did Not Violate Benjamin's Bankruptcy Discharge Or Bankruptcy Stay.

Benjamin makes two types of claims related to his bankruptcy: (1) that it was improper for the superior court to divide the marital estate when it did because the bankruptcy stay was still in effect; and (2) that the court's property award was invalid because it assigned him debts discharged in bankruptcy.

---

[13] (...continued) potential future reduction in Social Security Disability benefits and his request for protection from a potential future bankruptcy filing by Stephenie. They also include a number of passing assertions of error accompanied by no explanation or support.

[14] *Berry v. Berry*, 277 P.3d 771, 774 (Alaska 2012) (quoting *Peterson v. Ek*, 93 P.3d 458, 467 (Alaska 2004)).

[15] *Kinnan v. Sitka Counseling*, 349 P.3d 153, 160 (Alaska 2015) (quoting *Khalsa v. Chose*, 261 P.3d 367, 376 (Alaska 2011)).

[16] *See Berry*, 277 P.3d at 774.

**1. The property division trial did not violate the bankruptcy stay.**

Benjamin argues that the superior court violated the bankruptcy stay by holding the property division trial, and that it was therefore only possible for the court to address his request for reorientation support and to divide assets that were either abandoned from the bankruptcy estate or never part of it. He also argues that the Great West 401(k) and his two claims for reimbursement of children's medical expenses, which the court had held in abeyance until trial, belonged to his bankruptcy estate and could not be ruled on.

Federal bankruptcy law imposes a stay on any judicial proceedings involving property belonging to the bankruptcy estate.[17] The bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case," with certain exceptions.[18] The stay does not apply to an action for dissolution or divorce, "except to the extent that such proceeding seeks to determine the division of property that is property of the estate."[19] The stay "continues until the earliest of (A) the time the case is closed; (B) the time the case is dismissed; or (C) if the case is a case under chapter 7 of this title concerning an individual . . . the time a discharge is granted or denied."[20]

Benjamin filed for Chapter 7 bankruptcy on September 18, 2014. He received a discharge on January 20, 2015. As the superior court explained at trial, it was free to divide the marital estate once Benjamin received his discharge because the stay

---

[17]     11 U.S.C. § 362(a)(3) (2012); *see also Brown v. Knowles*, 307 P.3d 915, 923 (Alaska 2013) (citing 11 U.S.C. § 362(a)(3)).

[18]     11 U.S.C. § 541(a)(1), (b) (2012); *see Brown*, 307 P.3d at 923-24.

[19]     11 U.S.C. § 362(b)(2)(A)(iv).

[20]     11 U.S.C. § 362(c)(2) .

terminated at that time.[21]  The superior court did not violate the bankruptcy stay by holding the trial in June 2015.

Benjamin argues that the stay lifted by his discharge "is independent of" another stay established by 11 U.S.C. § 362(c)(1), and that the second estate stay was still in effect at the time of the divorce trial.[22]  He explains that 11 U.S.C. § 362(c)(1) "afforded [him] an automatic stay 'of an act against property of the estate under subsection (a)' that 'continues until such property is no longer property of the estate.' " But a property division is not "an act against property of the estate," to which subsection (c)(1) applies; it is an "act to exercise control over property of the estate," to which

---

[21]  11 U.S.C. § 362(c)(2).  Benjamin also complains that he was improperly pressured into continuing with the property trial despite his concerns about the bankruptcy.  Although the court did strongly recommend going ahead with the trial, it repeatedly offered a continuance and did not state or imply that Benjamin would suffer any negative consequences in the proceedings as a result of a decision to delay trial. Benjamin has not suggested any reason that the court's actions should be considered improper.

[22]  11 U.S.C. § 362(c)(1)-(2) provides that, with some exceptions,

(1) the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate;

(2) the stay of any other act under subsection (a) of this section continues until the earliest of–

(A) the time the case is closed;

(B) the time the case is dismissed; or

(C) if the case is a case under chapter 7 of this title concerning an individual . . . , the time a discharge is granted or denied.

subsection (c)(2) applies.[23]  Benjamin is mistaken; 11 U.S.C. § 362(c)(1) did not apply to this proceeding.

>    **2.    The superior court's awards of assets and debts did not violate the bankruptcy stay.**

Neither the Great West 401(k) nor Benjamin's claims for children's medical expenses appear to have been part of the bankruptcy estate.[24]  And a debtor's 401(k) accounts are exempted from the bankruptcy estate under 11 U.S.C. § 541(c)(2) as ERISA-qualified retirement plans.[25]  Benjamin is not the account holder on this Great West 401(k); his claimed interest is as the primary beneficiary of the account.  Finally, Benjamin has provided no evidence that his claims for medical expenses for the children belonged to the bankruptcy estate and no legal argument that they qualify as a setoff

---

[23]    11 U.S.C. § 362(c)(2); *see In re Howell*, 311 B.R. 173, 174 (Bankr. D.N.J. 2004) (discussing the equitable division of property in a divorce case as an "act to exercise control over property of the estate"), *recognized as abrogated on other grounds by In re Ruitenberg*, 745 F.3d 647 (3d Cir. 2014).

[24]    Benjamin also argues that the court violated its own earlier ruling that it could not change the parties' marital status while the distribution of retirement assets was at issue.  But as Stephenie correctly notes, this ruling was a response to her motion for a bifurcated divorce; the court was merely explaining that it could not issue a divorce decree prior to dividing retirement assets.

[25]    2 ARTHUR H. BOELTLER,  REPRESENTING THE BANKRUPTCY TAXPAYER § 9:39 (2016 ed.) ("Section 401K plans fall within ERISA and are not part of the bankruptcy estate.");  *see also IRS v. Wingfield* (*In re Wingfield*), 284 B.R. 787, 789-90 (Bankr. E.D. Va. 2002) (explaining that § 541(c)(2) excludes ERISA qualified pension plans, including 401(k) accounts, because they are subject to transfer restrictions and holding that "[t]he debtor's interest in his 401(k) plan is not property of the estate").

under 11 U.S.C. § 362(a)(7).[26] That claim is therefore waived.[27]

Nor did the superior court assign any debts to Benjamin in violation of his bankruptcy discharge. Benjamin argues that the court violated the discharge by assigning him "permanent non-dischargeable debt" in the form of the mortgage on the marital home. But he reaffirmed the mortgage during his bankruptcy and testified that he intended to keep the home, so the retention of the debt was his choice rather than the court's. He also argues that anything he owed to Stephenie from the value of a Toyota FJ Cruiser, which he sold to pay expenses during the separation, was a debt to her that was discharged in his bankruptcy and therefore should not have been recouped from him in the property division. However, he has not explained why that value should be considered a debt he owed to Stephenie, nor does the bankruptcy paperwork indicate that he even listed it as a debt to be discharged. This argument is also waived.[28]

## B. The Property Division Was Based On Erroneous Factual Determinations.

The equitable distribution of marital assets in a divorce proceeding follows a three-step process: determining what property must be distributed, finding its value, and allocating it equitably.[29] Benjamin challenges various decisions in every step. Because we conclude that the court erred in some of its marital property valuations, we do not review whether the overall distribution was equitable or whether the court failed to consider specific factors in its analysis.

---

[26]    *See Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 18-19 (1995) (explaining requirements for setoffs).

[27]    *See Hymes v. DeRamus*, 222 P.3d 874, 887 (Alaska 2010).

[28]    *See id*. at 887-88.

[29]    *Edelman v. Edelman*, 3 P.3d 348, 351 (Alaska 2000) (citing *Wanberg v. Wanberg*, 664 P.2d 568, 570 (Alaska 1983)).

### 1.      Determinations of marital and non-marital property

In equitably dividing property, the court must first determine whether a given piece of property is marital or separate.[30]  Benjamin and Stephenie generally agreed which assets or debts were marital and which were separate.  Benjamin objects to the court's treatment of three items or categories of property.

Benjamin claims the superior court failed to consider his interest in an "unaccounted" $2,000 401(k) account.  The only 401(k) in the record with a similar balance is part of Stephenie's benefit package from her employment in Colorado, which began after the parties separated.  "As a general rule, 'property acquired after separation is properly excluded from the category of marital property,' "[31] and Benjamin has not explained why this rule should not apply here.  The court did not err in declining to include this account on the list of marital property.

Benjamin next argues that the superior court wrongly allocated to him property belonging to a child even though it had "made an oral ruling" that it would not divide the children's property.  Benjamin is correct that "[t]he custodial parent should not have the children's separate property credited against his or her share of the marital estate."[32]  Property belonging to the children, including furniture, outdoor gear, and electronics, was not part of the marital estate and the court properly did not include it.  Benjamin argues that a 2005 Camry and a 2012 Ski-Doo belong to his older son and should not have been allocated to him in the property division.  But Benjamin testified that he and Stephenie were on the title for the Camry because their son was too young

---

[30]      *Id.*

[31]      *Ruppe v. Ruppe*, 358 P.3d 1284, 1293 (Alaska 2015) (quoting *Richter v. Richter*, 330 P.3d 934, 939-40 (Alaska 2014)).

[32]      *Beal v. Beal*, 88 P.3d 104, 119 (Alaska 2004).

to own a vehicle. And he never asserted that their son was the Ski-Doo's owner of record, only that he wanted to keep it for his son. The court's findings that these vehicles were marital property were not clearly erroneous.

Benjamin also argues that the court failed to divide a number of items of marital property. But none of the items he identifies were marital property. One was a lien for divorce attorney fees held by an attorney who had represented Stephenie, but the superior court explained that such fees are non-marital debt as a matter of law. The other debts he mentions were identified as non-marital or post-separation debts in property spreadsheets and testimony that Benjamin himself offered to the trial court. Benjamin never claimed otherwise before bringing this appeal. If any of these items were marital property, Benjamin has waived his right to make that argument.[33]

## 2. Valuation of marital property

The superior court is generally required to determine the fair market value of each asset.[34] Benjamin disputes the court's valuation of a parcel of land known as the Ridgeview property and its valuation of a 2012 Ski-Doo. Only the valuation of the 2012 Ski-Doo was clearly erroneous.

Benjamin argues that the court erred in valuing the Ridgeview property, which he purchased under a Department of Natural Resources land sale contract for $10,700. He argues that he has no equity in the property, that he will not own it unless

---

[33]    *See Ace Delivery & Moving, Inc. v. Alaska State Comm'n for Human Rights*, 350 P.3d 776, 781-82 (Alaska 2015) (quoting *State v. Nw. Constr., Inc.*, 741 P.2d 235, 239 (Alaska 1987)). He also lists overdue property tax on a piece of property that the parties referred to as the "14804 Heath property," but the only mention of it at trial was its listing on his spreadsheet as a "post separation payment[] on marital debt." This claim is also waived.

[34]    *Thomas v. Thomas*, 815 P.2d 374, 377 (Alaska 1991) (quoting *Nelson v. Jones*, 781 P.2d 964, 970 (Alaska 1989)).

he successfully makes all the payments on the 15-year contract, and that it cannot be sold. His characterization of the situation is generally correct.[35] He was unable to provide an alternative value for the property, and the only evidence of value in the record was a copy of the land sale contract indicating the contract price. And although Benjamin was assigned the contract value of $10,700 for the property, the $9,862 still owed on the purchase contract was deducted from it, making the net value assigned to him only $838. "[W]here there is no better evidence in the record, the court does not err by valuing an asset at its original cost."[36] In the absence of a proposed alternative valuation or valuation method, the court's decision is not clearly erroneous.

Benjamin argues that the court was wrong to award him the 2012 Ski-Doo at full value when it had an unresolved lien for more than its value and was subject to repossession by the lienholder. Stephenie agrees. The parties had purchased two Ski-Doos on credit several years earlier, and the bankruptcy trustee agreed to seize only one of them in exchange for retaining the full value at auction of the seized snowmachine. The second snowmachine remained at the marital home at the time of trial. But Stephenie testified that the loan, held by Sheffield Financial, had been charged off and the lender was no longer pursuing repayment. Benjamin testified that he had been contacted more than once by the lender about repossession, though Stephenie noted that the lender might instead write the vehicle off because of the cost of repossessing it from Alaska.

---

[35] *See Purchase Information*, ALASKA DEP'T OF NAT. RES., http://www.dnr.alaska.gov/mlw/landsale/brochure/purchase_information.cfm (last visited Jan. 27, 2017). As the contract language Benjamin quotes in his brief indicates, however, the Department of Natural Resources must give prior approval to a sale, but it is not banned outright.

[36] 2 BRETT R. TURNER, EQUITABLE DISTRIBUTION OF PROPERTY, § 7:10 (3d ed. 2016).

The court evidently misunderstood or forgot the parties' testimony on the subject of the snowmachine and the Sheffield loan. When the court asked about the parties' valuation of a "Sheffield RV," evidently believing that the marital estate included a recreational vehicle, both parties explained that there was no RV and that the loan applied to the Ski-Doos. Benjamin's property spreadsheet did label it "Sheffield Financial RV loan." The court understood that a vehicle would be repossessed, as indicated by its note in the property award chart next to the "Sheffield RV" and "Charged off RV loan," but it assigned the zero value to a nonexistent RV instead of to the Ski-Doo.[37]

This decision was clearly erroneous. The marital estate did not contain a "Sheffield RV," and Benjamin was wrongly awarded the full value of the 2012 Ski-Doo when that value ought to have been reduced "by the value of any liens or other debts which encumber the asset."[38] Because the Ski-Doo's listed value of $9,760 is a significant proportion of the net assets awarded to Benjamin, remand is required so the superior court can reevaluate the actual net value of the Ski-Doo and the resulting equity of the overall property division.[39]

### 3. Recapture of marital property spent during separation

The superior court awarded Benjamin marital property that had been sold

---

[37] Benjamin separately argues that the court was wrong to award him this nonexistent property. The error is harmless because no monetary value was associated with the award. Alaska R. Civ. P. 61.

[38] TURNER, *supra* note 36, § 7:8.

[39] Benjamin also disputes the adequacy of the evidence supporting the court's valuation of another parcel of real property, claiming that the only evidence introduced was hearsay so there was no admissible evidence of the actual sale price. But at trial the parties agreed on the listed value, so it was not an issue that the court decided, and Benjamin may not challenge it now.

during the separation. Benjamin had sold the parties' Toyota FJ Cruiser for $10,000; the court valued it at $13,000 and allocated that value to him in the property division. He testified that he primarily spent the proceeds on mortgage payments.

We have held that marital property spent between separation and trial "need not be taken into account in the final property division" if it was "spent for a marital purpose or necessarily expended for normal living expenses."[40] We have also held that it is error to "recapture[] property without making specific findings of fact as to waste or dissipation."[41] Benjamin argues that the superior court was wrong to recoup the vehicle's value by allocating it to him because he spent the money on mortgage payments to preserve the marital estate and on normal living expenses.

There were no allegations that Benjamin had wasted or dissipated the proceeds of the Toyota FJ Cruiser. It was error not to make findings as to waste or dissipation before recapturing the vehicle's value, and without such findings we are unable to review whether the court correctly recouped its value. We therefore remand for the court to evaluate the facts and make the necessary findings or change the property award.[42]

---

[40]     *Foster v. Foster*, 883 P.2d 397, 399-400 (Alaska 1994) (citing BRETT R. TURNER, EQUITABLE DISTRIBUTION OF PROPERTY § 8.15, at 374 (Cum. Supp. 1993)); *see also Day v. Williams*, 285 P.3d 256, 264 (Alaska 2012) ("Marital assets that are spent after separation for marital purposes or normal living expenses are not typically taken into account in the final property division." (quoting *Partridge v. Partridge*, 239 P.3d 680, 692 (Alaska 2010))).

[41]     *Day*, 285 P.3d at 260 (citing *Ethelbah v. Walker*, 225 P.3d 1082, 1090-91 (Alaska 2009)).

[42]     Although the issue was not raised in the parties' pro se briefs, we note that the court allocated $8,782 to Stephenie for the value of three retirement accounts she liquidated post-separation, also without making findings of fact as to waste or
(continued...)

## 4.    Denial of credit for post-separation mortgage payments

In a property division, a court "may give credit to one spouse for post-separation payments made to preserve marital assets, but [is] not required to do so."[43] The court should consider "the fact that one party has made payments from non-marital income to preserve marital property" as one of the factors to be weighed in dividing the property.[44] The court is required "to make factual findings on whether a credit is appropriate."[45]

The superior court made the required findings, noting that Benjamin had resided in the home throughout the proceedings and that the home had a "reasonable rental value of at least the amount of the monthly mortgage payment," which was $1,280. Because he "received the benefit of that housing," which was at least what he paid, the court found that he was not entitled to a credit for the payments he made.[46] Benjamin does not challenge these findings.

---

[42]    (...continued)
dissipation. Benjamin's trial briefing did allege that she had wasted the assets. On remand, the court should also reevaluate this award.

[43]    *Berry v. Berry*, 978 P.2d 93, 96 (Alaska 1999).

[44]    *Id.* (quoting *Ramsey v. Ramsey*, 834 P.2d 807, 809 (Alaska 1992)).

[45]    *Id.*

[46]    The court also noted that it had used the separation date for the value of the principal balance on the mortgage, which "reduc[ed] the dollar value of the home equity." This had the effect of giving Benjamin partial credit for the payments, because the mortgage debt assigned to him in the property division included the portion of the principal balance that he had paid in the intervening years.

Benjamin argues that he should nevertheless be credited for the amounts he paid because the reasoning above, which we have endorsed,[47] does not apply here. He argues that because Stephenie moved in with her parents in Colorado, both parties were living rent-free after their separation and therefore he should not have his rent-free residence in the marital home counted against him. But the relevant inquiry is not whether he was paying rent, but whether the benefits Benjamin put into the estate were greater than the benefits he received from it. Benjamin suggests that our reasoning implies a party must have had a choice whether to live in the marital home for the offset to be denied, and that he had no such choice. This is not the case. The superior court made the findings it was required to make and concluded that Benjamin was not entitled to an offset. Its decision was not an abuse of discretion.

**5. Award of marital home to Benjamin without consideration of whether he had the means to maintain it**

Benjamin argues that the superior court erred by awarding him the marital home without considering whether he had enough resources to maintain the home as required by his mortgage conditions and to avoid foreclosure. He testified at trial that the septic system required approximately $13,500 in repairs and that the equipment he had used to maintain the road was seized in the bankruptcy. He argued that the court was not really giving him the house if it awarded him the property but not the resources to fix it (and therefore to keep it).

In *Day v. Williams* Day had significant medical problems that interfered with her ability to work, and the primary asset awarded to her was a duplex which had

---

[47] *See Rodriguez v. Rodriguez*, 908 P.2d 1007, 1013 (Alaska 1995) (upholding denial of credit for post-separation mortgage payments where "any benefit which [the appellant] may have imparted to the marital estate was offset by the benefit he received from the estate by living rent-free").

been the marital home.[48] Day moved for reconsideration on the grounds that she lacked the funds to maintain the home and protect it from foreclosure.[49] The superior court reconsidered whether to award her the home or to direct that it be sold and the proceeds be divided.[50] But it ordered Day to attempt to refinance the home and ordered a contingent sale if she was unable to do so.[51] In addition to noting that the superior court's award on reconsideration was ambiguous, we held that the superior court was wrong to award Day the home "without considering whether she would have sufficient funds to maintain the property" and that it had erred by failing to explain how the costs and proceeds should be divided.[52]

Day does not squarely apply here. Day argued that the property division "made it financially impossible for her to keep the house" because the mortgage exceeded the rental income and she had no other resources to pay it.[53] We remanded the 50-50 distribution of the marital estate for additional findings because the superior court had not explained the basis for its decision and "even a superficial examination and balancing of the statutory factors appear[ed] to weigh in favor of the spouse who earn[ed] substantially less than the other spouse."[54] Here the superior court weighted the property division strongly in Benjamin's favor. And although the court implied that

---

[48]    285 P.3d 256, 259-67 (Alaska 2012).

[49]    *Id.* at 264.

[50]    *Id.* at 264-65.

[51]    *Id.* at 265.

[52]    *Id.* at 265-67.

[53]    *Id.* at 265.

[54]    *Id.* at 263.

Benjamin was economically disadvantaged, Stephenie's gross income is about two-thirds of Benjamin's net income.

Moreover *Day* asks courts to consider whether a party can retain property it is awarded; it does not require explicit findings on the subject. It was apparent that the superior court in *Day* had not considered whether Day could afford to retain the property because the rental income was lower than the mortgage and Day had no other apparent source of income.[55] Here the court calculated that Benjamin could afford the mortgage and all his expenses. Stephenie agreed to accept Benjamin's proposed value of $215,000 for the house — the value eventually used by the court — instead of the appraised $230,000 she preferred because of the required septic repairs. And the only evidence that the additional expenses were conditions of the mortgage was Benjamin's testimony to that effect; he did not claim that any action was being taken or likely to be taken against him on those grounds. The superior court may well have concluded that, post-bankruptcy, Benjamin could afford to save money for the septic repair and road maintenance because they were not urgent needs.[56] Under these circumstances we do not find that the superior court abused its discretion in awarding Benjamin the house without explicitly discussing his ability to afford the repairs.

## C. It Was Not An Abuse Of Discretion To Deny Spousal Support.

We have emphasized that property division is the preferred method for

---

[55]    *Id.* at 259, 262 & n.21 (indicating that Day was not employed and faced difficulties due to vision problems).

[56]    The septic problems were evidently not new. The repair quote Benjamin presented was from September 2014, and he testified that a January 2014 invoice was from a previous attempt to fix the issue. There was no evidence that the septic problems affected the habitability of the house or that there was a short-term risk of repossession based on the loan terms.

providing for each party's needs and fairly allocating the economic effect of divorce.[57] "But this rule obviously presumes that there is sufficient property to provide for the parties' needs."[58] When the property division is inadequate for this purpose spousal support may be awarded.[59]

The superior court considers both the requester's need for support and prospective payer's ability to pay.[60] The trial court found that Benjamin did not need support "to meet his routine expenses." It also found that Stephenie was not "in a sufficiently strong financial position to pay spousal support." Benjamin argues that he needs reorientation support because of the effects of his bankruptcy; his lack of medical benefits, which Stephenie had provided; and the need for repairs to the home. At trial he sought $300 per month for four years, saying he was unable to determine exactly how much he would need but that was his estimate of what would be "enough to make zero each month" on his expenses.

---

[57] *See, e.g.*, *Morris v. Morris*, 908 P.2d 425, 428 n.2 (Alaska 1995) ("[W]e have repeatedly stated a preference for property division over alimony." (citing *Hilliker v. Hilliker*, 755 P.2d 1111, 1112 (Alaska 1988))); *Schanck v. Schanck*, 717 P.2d 1, 5 (Alaska 1986) ("[O]ur decisions have established a preference for meeting the parties' needs with the division of property, rather than with alimony, where marital assets are adequate to do so." (citing *Bussell v. Bussell*, 623 P.2d 1221, 1224 (Alaska 1981))).

[58] *Dixon v. Dixon*, 747 P.2d 1169, 1173 (Alaska 1987).

[59] *Dundas v. Dundas*, 362 P.3d 468, 480 (Alaska 2015). Rehabilitation alimony is the only type of alimony that does not require a finding that property division is inadequate, *id.*, but would be inappropriate in this case as Benjamin is not seeking to return to work.

[60] *Davila v. Davila*, 876 P.2d 1089, 1094 (Alaska 1994) ("[A]n award of alimony must be accompanied by adequate findings, particularly with respect to the financial needs and abilities of both parties . . . .").

Reorientation support "is essentially transitional and may be awarded for brief periods to provide support pending the sale of marital property or to enable a spouse to get a job appropriate to the spouse's existing skills."[61] Here no marital property was being sold and the court noted that "[i]t [did] not appear that Benjamin would use such support to obtain job training" because he "acknowledge[d] that he [could not] work." Furthermore Benjamin's request was not for a short transitional amount to help him adjust but for ongoing support to "make zero each month." We have held that reorientation support "should ordinarily be awarded only 'when the property settlement will not adequately meet the parties' reasonable needs.' "[62] The superior court ultimately found that Benjamin "appear[ed] to have an adequate income to meet his needs" as he had been relieved of all his debt other than the mortgage.

Benjamin also challenges the superior court's determination that Stephenie could not afford to pay spousal support. The court based its decision on Stephenie's current income, which was significantly less than Benjamin's, and noted that she and the parties' younger son were still living with her parents but hoped to be able to move to their own housing. Benjamin argues that the court ignored evidence that Stephenie could have earned significantly more money. This evidence showed average salary data from the Colorado Department of Labor for positions other than the one held by Stephenie. The superior court did not abuse its discretion by relying on Stephenie's actual income or by denying Benjamin's request for spousal support.[63]

---

[61] *Silvan v. Alcina*, 105 P.3d 117, 124 (Alaska 2005) (quoting *Davila v. Davila*, 908 P.2d 1025, 1027 (Alaska 1995)).

[62] *Dundas*, 362 P.3d at 480 (quoting *Davila*, 876 P.2d at 1094).

[63] The superior court also referred to one additional factor in its decision. It explained that the court must attempt to address inequities between spouses through its

(continued...)

**D. The Superior Court Did Not Violate Benjamin's Disability Rights.**

Benjamin claims that his rights as a person with a disability were violated in several ways, primarily by the court's decision to let Stephenie appear via telephone and the absence of an interpreter for him. He cites the ADA and several court rules in support of his arguments, not all of which are applicable.[64]

Alaska Rule of Civil Procedure 99 governs when parties and witnesses may appear by telephone. The rule allows such appearance for good cause, as long as there is no substantial prejudice to the opposing party.[65] We prefer "a liberal application of Rule 99"[66] and have held that it is an abuse of discretion for a court to deny a motion to appear by telephone when the moving party would have "incurred significant expense" to travel to Alaska from Washington and the opposing party agreed to the appearance.[67]

Stephenie filed a motion to participate by telephone in future hearings on March 23, 2015. Her request cited the cost of traveling to Alaska from her home in Colorado Springs and taking time off from work, the necessity of leaving the parties' 12-

---

[63] (...continued)
property division and only provide spousal support if an unequal division "cannot resolve any economic disparity." The court then noted that it had awarded Benjamin "the lion's share of the marital estate" and that Stephenie was receiving more debt than assets.

[64] For example, Benjamin argues that the court failed to ensure that court personnel were available for persons with disabilities under Alaska Administrative Rule 27(b)(2), but this rule governs the responsibilities of the presiding judge of each judicial district, not the actions of a particular judge in a particular case.

[65] Alaska R. Civ. P. 99(a). Subsection (b) establishes procedures for telephonic participation in hearings.

[66] *Silvers v. Silvers*, 999 P.2d 786, 790 (Alaska 2000) (citing *Carvalho v. Carvalho*, 838 P.2d 259, 259-60 (Alaska 1992)).

[67] *Id.* at 790.

year-old son with other family members, and her discomfort with being in Benjamin's presence due to fear for her safety. Benjamin opposed, arguing that allowing her to appear by telephone would be substantially prejudicial to him for a number of reasons, including his disability. In reply Stephenie argued that she had appeared by telephone at eight prior hearings in the case and Benjamin had not previously complained of or displayed any difficulty. The court granted Stephenie's request in May 2015, finding good cause and no substantial prejudice to the opposing party.

Benjamin essentially argues that it was an abuse of discretion for the court to allow Stephenie's appearance by telephone because the court erred in concluding that he would not be substantially prejudiced due to his unspecified disability. We have not previously discussed this type of claim of prejudice in the context of a divorce.[68] Benjamin never expressly described his disability to the court, but explained that he relied on visual cues like mouth movements to understand speech and said he is unable to understand everything without them. He did not claim that he had ever raised the

---

[68] We have addressed when an in-person appearance may be necessary to allow the court to make credibility determinations. *See, e.g.*, *Asher v. Alkan Shelter, LLC.*, 212 P.3d 772, 780 (Alaska 2009) (holding that the superior court's credibility determinations were not rendered clearly erroneous merely because a party testified by telephone), *abrogated on other grounds by Shaffer v. Bellows*, 260 P.3d 1064 (Alaska 2011)).

A more analogous question has arisen in the termination of parental rights context, where an incarcerated parent claimed that he was denied due process because the court denied his request for transport to the termination trial and he had to appear by telephone. *Seth D. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 175 P.3d 1222, 1226-27 (Alaska 2008). He alleged at trial that "a learning disability made his personal attendance necessary so he could hear the witnesses and see the evidence." *Id.* at 1227. We applied the *Mathews v. Eldridge* balancing test to determine whether he was deprived of due process. *Id.* at 1227-29. Lesser due process interests are implicated here, and all the burdens of an in-person appearance would fall on another private party. *Seth D.* does not provide a reason to overturn the superior court's decision.

issue before. Benjamin did not allege that he had any difficulties with prior hearings and only stated that telephone calls sometimes have poor sound quality that interferes with his comprehension. Because Benjamin had participated in previous hearings without evident difficulty, it was not an abuse of discretion for the superior court to conclude that he would not be substantially prejudiced by Stephenie's continuing to appear by telephone.

Benjamin also argues that he was entitled to an interpreter under Alaska Administrative Rule 6.1 but was not given one. Administrative Rule 6.1(a) establishes that the court system will provide an interpreter in civil cases "where a party or witness is deaf, mute, or otherwise unable to effectively communicate because of a physical disability." But the record does not contain any motion or request for an interpreter under Administrative Rule 6.1 prior to or at the property division trial. His trial brief, for example, says that he "became legally disabled" in 2008 and discusses the impact of this on his financial situation, but does not express any concern about his ability to participate in the trial. The superior court is not obliged to invoke Administrative Rule 6.1 on its own. This argument is waived because Benjamin did not request an interpreter at trial.[69]

## V.    CONCLUSION

We REMAND the property division for further proceedings consistent with this opinion and AFFIRM the judgment of the superior court in all other respects.

---

[69]    *See Cizek v. Concerned Citizens of Eagle River Valley, Inc.*, 49 P.3d 228, 234 (Alaska 2002) (holding that a claim was waived because the appellants never requested relief below and the applicable civil rule did not require the superior court to act on its own).